# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 07-CV-02371-PAB-BNB

CITY OF AURORA, Colorado, a municipal corporation,
acting by and through its Utility Enterprise, Aurora Water,

    PLAINTIFF AND COUNTERCLAIM-DEFENDANT,

and

GRIMM CONSTRUCTION COMPANY, INC.
d/b/a GARNEY CONSTRUCTION, a Colorado corporation,

    COUNTERCLAIM-DEFENDANT,

vs.

PS SYSTEMS, INC., a Colorado corporation,
and RAR GROUP, LLC, a Colorado limited
liability company,

    DEFENDANTS AND COUNTERCLAIMANTS.

---

## MOTION TO DISMISS DEFENDANTS' COUNTERCLAIM
## FOR LACK OF SUBJECT MATTER JURISDICTION

---

Plaintiff and Counterclaim-Defendant, the City of Aurora, acting by and through its Utility Enterprise, Aurora Water (the "City"), and Counterclaim-Defendant Grimm Construction Company, Inc. d/b/a Garney Construction ("Garney" and collectively, with the City, "Aurora"), respectfully submit the following motion, pursuant to Fed. R. Civ. P. 12(h)(3), to dismiss the counterclaim of Defendants PS Systems and RAR Group (collectively, "Defendants") for lack of subject matter jurisdiction. In the alternative, Aurora moves the Court to exclude evidence concerning the alleged damages claimed by Defendants.

## INTRODUCTION

Through this action, the City seeks to ensure that it would not be in contravention of patented technology if it were to build an optional water purification component of its new Prairie Waters Project ("the Project" or "Prairie Waters").  Defendants' counterclaim for infringement of its patents relating to underground water storage depends entirely on an allegation that this unbuilt Aquifer Recharge and Recovery ("ARR") portion of Prairie Waters, if and when completed, would infringe Defendants' patents at some unspecified point in the future. Unlike Aurora, Defendants seek more than just a judicial determination of their rights; Defendants wrongly ask this Court to award speculative damages and injunctive relief based on infringement that has not occurred.  The City brought this Declaratory Judgment action precisely to avoid that scenario.  Because the parties could not resolve their dispute as to whether the City's design would infringe, the City decided it would not to build the technology at issue here until the issue of infringement or non-infringement was decided.

In addition to the logical problems and obvious unfairness that would result from ordering Aurora to pay damages for something that has not happened, Defendants have no standing to assert claims for infringement.  Defendants ignore Aurora's statements that it will forego construction of the allegedly-infringing portion of the Project if the Court determines that Defendants' patents are not invalid and are enforceable, and would be infringed by the ARR.  But the fact remains that, without a constructed ARR, Aurora has not and will not infringe Defendants' patents.

Defendants have not suffered—and indeed have not alleged—any constitutionally recognizable injury.  Absent any injury in fact, Defendants do not have standing to assert their

infringement counterclaim, and pursuant to Fed. R. Civ. P. 12(h)(3), the Court must dismiss Defendants' counterclaim for lack of subject matter jurisdiction.

Aurora respectfully requests that the Court address this Motion before trial commences, not only to conserve judicial resources and focus issues for trial, but also to avoid prejudice to Aurora through Defendants' presentation to the jury of evidence of alleged damages based on the future construction or operation of facilities that may never be built. *See* Fed. R. Civ. P. 12(i); *Sorensen v. PHI, Inc.*, No. 07-0996, 2007 WL 4522372, at *3 (W.D. La. Dec. 17, 2007).

## FACTUAL BACKGROUND

In 2004, in response to a severe drought that raised concerns about the continued adequacy of the City's water supply, the City began developing plans for a long-term water supply and purification system known as the Prairie Waters Project. The City broke ground on the Project in July 2007. When Prairie Waters becomes fully operational later this year, the Project will increase available water by allowing the City to take advantage of its rights with respect to reusable return flows recovered from the South Platte River.

Prairie Waters employs a multi-step water treatment process that begins with traditional riverbank filtration. First, water is pumped from the South Platte by a series of 27 extraction wells spaced along the river. After the water is initially purified by its filtration through the riverbank well field, it is piped to a pump station and then transported 34 miles via pipeline to the City's new state-of-the-art purification plant near the Aurora Reservoir, the Peter D. Binney Water Purification Facility ("the Peter Binney Plant"). Affidavit of Mark Pifher, Director of Water for the City of Aurora ("M. Pifher Aff.") at ¶ 5.

As originally conceived, the Project design contained configurations that both included and excluded the ARR. Because this litigation is not complete, and the City thus has not

received a declaration as to whether the ARR design is covered by the claims of the Defendants' patents, the City built Prairie Waters using the design configuration which did *not* include the ARR. M. Pifher Aff. at ¶ 2. Recently, the City began testing the Project, and has successfully drawn water from the South Platte River by means of the riverbank wells, and then run that filtered water from the riverbank well field through the 34-mile pipeline to the Peter Binney Plant. Water treated through Prairie Waters as currently built (without the ARR feature) will meet all state and federal drinking water quality standards. *Id*. at ¶¶ 7-8.

If the ARR is built, it will be located near the riverbank well field where water is pumped from the South Platte River, and water would pass through the ARR before entering the pipeline. The ARR configuration, including surface infiltration basins and a series of extraction wells, was designed to further naturally purify and treat water after it exited the riverbank well field but before it entered the pipeline on its way to final treatment at the Peter Binney Plant. To restrict the flow of groundwater into and out of the ARR, the facility would be surrounded by a low-permeability barrier ("LPB") consisting of two discontinuous slurry wall segments and two grout column segments, which are necessary to support a county road that bisects the ARR site. Pifher Aff. at ¶ 6.

The City selected Garney to construct the portion of the Project that included the ARR, as well as non-ARR components.[1] On March 20, 2008, The City entered into a Construction Agreement with Garney which specifies that construction of the LPB and the remainder of the ARR will take place in sequence, with each phase to be separately authorized by the City before construction can begin:

---

[1] In fact, the ARR component of Prairie Waters is a relatively minor part of the overall project in terms of cost. The total cost of the Prairie Waters Project was budgeted at approximately $754.8 million, and is currently estimated to be completed for approximately $655 million. The additional ARR purification portion of the Project, if built, is estimated to cost approximately $23 million. M. Pifher Aff. at ¶ 10.

      3.      ARR Site A (Bid Items C-1 through C-108)

           a.      Sequencing – Work on these bid items shall not begin before January 1, 2010. **A separate written authorization will be given for this work.**

      5.      LPB (Bid Items E-1 through E-29)

           a.      Sequencing – Work on these bid items shall not begin before January 1, 2009. **A separate written authorization will be given for this work.**

*See* Exh. A, Constr. Agmt., at p. 5, § 5.02(D)(3) & (5) (emphases added). The City has not authorized construction of the ARR[2] because it is waiting for the outcome of this declaratory judgment action. Aurora will not authorize Garney to proceed with construction of the ARR if either or both of the patents-in-suit – U.S. Patent No. 6,840,710 and U.S. Patent No. 7,192,218 ("the PS patents") – are found to be not invalid and enforceable, and there is a judicial declaration that one or both of the patents would be infringed if the ARR were built. M. Pifher Aff. at ¶ 4.

## PROCEDURAL HISTORY

The City filed this Declaratory Judgment action against Defendants on November 9, 2007, seeking a judgment of non-infringement and invalidity with respect to two patents owned by Defendants: U.S. Patent No. 6,840,710, titled "Underground Alluvial Water Storage Reservoir and Method" ("the '710 patent"), and U.S. Patent No. 7,192,218, titled "Direct Recharge Injection of Underground Water Reservoirs" ("the '218 patent"). (*See* Compl., ECF

---

[2] The LPB, consisting of two discontinuous slurry-wall segments and two grout column segments, has already been constructed. The LPB was built after the named inventors of the PS patents agreed that gravel pits confined by barriers, such as the numerous slurry-wall lined gravel pits found along the South Platte River, do not infringe the PS patents. *See, e.g.,* Exh. B, deposition of named inventor Stanley Peters taken in this action on June 26, 2008 ("Peters Dep.") at 221:3-16; 247:4-9 (acknowledging that even continuous slurry wall-lined enclosures do not infringe the '710 and '218 patents). If the design of the complete ARR is found to infringe one or both patents in this case, and Aurora therefore does not build an ARR, Aurora likely would mine gravel inside the LPB and use the excavated pit for water storage. M. Pifher Aff. at ¶ 9.

Doc. No. 1.)  In denying Defendants' Motion to Dismiss Aurora's action, Chief Judge Wiley Daniel found that Aurora faced "the untenable position of either pursuing arguably illegal behavior or abandoning the ARR component of the Project altogether."  (Order, ECF Doc. No. 54, at 19.)  On October 3, 2008, despite arguing in support of their Motion to Dismiss the diametrically contrary position that "Aurora [had] not built any system or practiced any method that would infringe [Defendants'] patents" (Defs.' Mot. to Dismiss, ECF Doc. No. 7, at 13), Defendants asserted a counterclaim for infringement of those same patents.  (*See* Defendants' Answer, ECF Doc. No. 55, at 9.)

Throughout discovery and by their Rule 26 disclosures, Defendants have maintained that infringement will not exist until the Project is built.  For example, in response to the City's interrogatory asking for the basis for Defendants' infringement allegations, Defendants stated in part that "Plaintiff's proposed 'ARR,' **if built**, . . . may infringe . . . the '710 patent."  *See* Exh. C at p. 4 (Resp. to Interrog. No. 1) (emphasis added).  Defendants provided a similar response to an interrogatory directed to Defendants' basis for alleged infringement of the '218 patent.  *Id.* at p. 6 (Resp. to Interrog. No. 2).  Defendants have not supplemented or amended these interrogatory responses.

In their Rule 26 disclosures, Defendants also premise damages on Aurora's alleged future infringement of Defendants' patents.  Defendants are not seeking lost profits; their damages claim is limited to a reasonable royalty based on two categories of costs that allegedly will be incurred by Aurora if it constructs the ARR.  *See, e.g.,* Exh. D (Defendants' Rule 26(a)(1) Second Supplemental Disclosures dated May 21, 2009, identifying only reasonable royalty damages claims) and Exh. E, excerpt from deposition of Defendants' retained witness on damages, Robert Kleeman, taken on May 8, 2009 ("Kleeman Dep."), at 238:4-8.  Through

discovery responses, Rule 26 disclosures, and their expert's opinions, Defendants identified only the following damages theories:

- supposed cost savings achieved by Aurora by purification at the ARR, as opposed to some other water treatment facility or combination of facilities; and

- supposed cost savings that the City allegedly will realize through the ongoing operation of the ARR facility if it is built.

Recently, counsel for Defendants suggested that Defendants may seek damages based on a theory that the ARR has been "offered for sale" or "sold" in some manner through the Garney contract, or possibly that Garney's return of title to equipment components of the ARR upon its completion (if it ever were built and completed) constitutes a current "sale." Aside from the factual inaccuracies underpinning this untenable argument, because these theories were never disclosed in discovery responses or expert opinion, nor in Defendants' supplemental disclosures, they must in any event be excluded from consideration even if this Court were to allow Defendants to present a damages case.

## ARGUMENT

Defendants' counterclaim should be dismissed for lack of subject matter jurisdiction because Defendants do not have standing to assert a claim for alleged infringement that has not occurred and will not occur in the future. In addition, Defendants should not be permitted to present evidence in support of irrelevant and speculative damages theories that depend on those same hypothetical future events. Neither of the bases for Defendants' damages calculations has any basis in current injury, and thus the theories cannot support an award of damages or a reasonable royalty calculation under any conceivable scenario.

**I.      Defendants' Counterclaim For Patent Infringement Should Be Dismissed For Lack of Subject Matter Jurisdiction.**

A district court must dismiss a claim if at any time the court determines that it lacks jurisdiction over the subject matter. *See* Fed. R. Civ. P. 12(h)(3); *Raccoon Recovery, LLC v. Navoi Mining & Metallurgical Kombinat*, 244 F. Supp. 2d 1130, 1136 (D. Colo. 2002). The party asserting jurisdiction bears the burden of proving the existence of subject matter jurisdiction. *Port City Properties v. Union Pacific Railroad Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008). The court does not have subject matter jurisdiction over a claim asserted by a party that lacks standing under the case-or-controversy requirement of Article III. *Edwards v. Doe,* 331 Fed. Appx. 563, 567 (10th Cir. 2009). As explained more fully below, Defendants in this case cannot prove—and have not even alleged—facts sufficient to establish standing to assert a counterclaim for infringement against Aurora. Accordingly, Defendants' counterclaim must be dismissed under Fed. R. Civ. P. 12(h)(3) for want of subject matter jurisdiction.[3]

**A.      Standing To Assert A Claim For Infringement Requires Actual Infringement.**

To satisfy the standing requirement of Article III, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *See Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1338-39 (Fed. Cir. 2007) (quoting *Hein v. Freedom Religion Found, Inc.*, 551 U.S. 587, 588 (2007)). The injury must be actual or imminent, not conjectural or hypothetical, and there must be a causal connection between the injury and the conduct complained of. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). In the context of a claim for patent infringement, the standing question turns on whether the patent statute grants the patentee a right to relief. *Morrow*, 499 F.3d at 1339. Thus,

---

[3] Pursuant to Fed. R. Civ. P. 12(i), issues of subject matter jurisdiction should be resolved before trial. *See Sorensen v. PHI, Inc.*, No. 07-0996, 2007 WL 4522372, at *3 (W.D. La. Dec. 17, 2007).

because the statute defines the patentee's exclusionary rights, constitutional injury occurs only when a party performs at least one of the actions prohibited by the statute. *Id*. Put simply, standing to assert a claim for patent infringement requires actual infringement: "[W]hoever without authority makes, uses offers to sell, or sells any patented invention, within the United States . . . during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a).

Defendants cannot show Aurora has performed any of the acts prohibited by the statute. First, it is undisputed that Aurora has not made, used, or imported the allegedly infringing ARR. Second, Aurora has not sold or offered to sell the ARR. Despite the recent suggestion by Defendants' counsel that Defendants may assert infringement and injury under a "sale" or "offer to sell" theory, none of their discovery responses, damages disclosures, nor their damages expert's opinions, as discussed above, contain a theory of "offer for sale" or "sale" theory to prove infringement and thus damages. Defendants cannot be permitted at this late stage to assert infringement under one or both of those theories, at a minimum because Aurora has not had the opportunity to explore this new theory in discovery. *See* Fed. R. Civ. P. 37(c)(1).

At any rate, Defendants could not prevail on such a theory. The relevant Prairie Waters bid documents and the construction agreement between the City and Garney expressly condition construction of the ARR on subsequent authorization by the City, referencing resolution of this litigation as a condition precedent:

> **The City is currently resolving certain legal issues associated with patent claims related to the ARR facility. Construction of the project components associated with the ARR will therefore be sequenced to allow the City an opportunity to delete the Bid Form Part C (ARR Site A) and/or Bid Form Part E (LPB) from the project if a satisfactory resolution of these patent issues can not be reached with the patent claimants. If in the sole judgment of the City such resolution is unfavorable to the City these project components may be eliminated, in whole or in part as best serves the City, from the work after award of this contract.**

Exh. A, Constr. Agmt., at p. 3, § 1.01.

Accordingly, to the extent that there was an offer to enter into a contingent contract to construct the ARR, any such offer explicitly excluded ARR design elements that Defendants allege form the basis of infringement. Thus, neither the City nor Garney's actions can rise to the level of an offer for sale or a sale under 35 U.S.C. § 271(a). *See FieldTurf Int'l, Inc. v. Sprinturf, Inc.*, 433 F.3d 1366, 1369-70 (Fed. Cir. 2006) (Court of Appeals for Federal Circuit affirmed district court's ruling that alleged infringer's bid to a school district to supply and install artificial turf did not constitute an "offer to sell" an infringing product even where patented product specified in bid, where bid recipient school district had actual knowledge that alleged infringer could not legally sell the product, and would not provide the allegedly-infringing product); *see also Natare Corp. v. Aquatic Renovation Sys., Inc.*, 99 F. Supp. 2d 986, 991-94 (S.D. Ind. 2000).

The City has not released its contractor, Garney, to begin construction of the infiltration basins, extraction wells, test wells, and associated electrical systems and piping at the site of the proposed ARR, and per the City's contract with Garney, that work **cannot commence** without the City's approval. *See* Exh. F, Deposition of Scott Terry, Garney Senior Vice President, taken in this action on February 23, 2009 ("S. Terry Dep.") at 31:15-24, 43:4-44:4. Aurora intentionally sequenced construction of certain components of the ARR in a manner that allowed Aurora to completely omit the ARR from Prairie Waters, by never authorizing construction of the ARR if this dispute is not resolved to Aurora's satisfaction. *See* Exh. A, Constr. Agmt., at p. 5, § 5.02(D)(3) & (5); M. Pifher Aff. at ¶¶ 2, 4. Thus, because the ARR does not currently infringe either of the patents-in-suit, Defendants cannot have suffered an injury "fairly traceable" to any alleged infringement by Aurora. *See* 35 U.S.C. § 271(a); *Morrow*, 499 F.3d at 1338.

### B. Allegations Of Future Infringement Do Not Establish Jurisdiction Over A Claim For Infringement.

Defendants have consistently argued that infringement of their patents depends on the construction and operation of the ARR. Defendants relied on this position in asking the Court to dismiss this action. Defendants have not disclosed any infringement theory other than the hypothetical infringement that will purportedly occur in the future if the ARR is actually built. Moreover, despite three sets of Rule 26(a)(1) disclosures and one expert report on the subject of damages, Defendants have not identified any purported damages that they have suffered because of Aurora's past actions, or that they will suffer if Aurora does not build and operate the ARR component of Prairie Waters. In fact, Defendants' damages expert Robert Kleeman acknowledged that if Aurora did not build the ARR, **no infringement would exist:**

> Yeah, the City has under the contract the right to not use the ARR. If they don't use the ARR, then they probably don't infringe.

Exh. E, Kleeman Dep. at 165:3-5. Moreover, his damages opinions are based on the assumption that the ARR infringes the PS Patents. *See id.* at 119:14-24.

With no legitimate allegation of past infringement or actual damages, Defendants are left with the argument that the ARR will allegedly infringe the PS Patents at some point in the future. However, allegations of future infringement are not sufficient to support subject matter jurisdiction over a claim for infringement. *See, e.g., Lang v. Pacific Marine & Supply Co.*, 895 F.2d 761, 765 (Fed. Cir. 1990) (refusing to recognize alleged threatened patent infringement as stating a claim under 35 U.S.C. § 271); *Gasner v. Board of Supervisors of the County of Dinwiddie, Va.,* 103 F.3d 351, 361 (4th Cir. 1996) ("An allegation of a possible future injury does not satisfy the requirements of Article III."); *Simmons v. Cook*, No. 07-CV-1279, 2010 WL

1253548, at *20 n.3 (S. D. Ohio Mar. 29, 2010) (noting that potential patentee does not have standing to sue for infringement until patent issues).

Defendants are really asking the Court for an advisory opinion that, if Aurora were to complete the ARR at some point in the future, Defendants would be entitled to damages for infringement. *See Swedlow, Inc. v. Rohm & Haas Co.*, 455 F.3d 884, 885-886 (9th Cir. 1974) (finding that the court lacked subject matter jurisdiction over patentee's claim for declaratory relief against threatened infringement by a plant not yet in operation). Courts only allow patentees to pursue "**[d]eclarations** of infringement . . . against parties who will allegedly infringe in the future," *Lang*, 895 F.2d at 763 (emphasis added). Remedies available in such cases, however, do not include injunctive relief or damages for infringement that has not occurred. *See id*. at 765 (dismissing claim for injunction based on "alleged threatened patent infringement"); *Bontkowski v. Smith*, 305 F.3d 757, 761 (7th Cir. 2002) (declaratory relief cannot be sought as predicate for subsequent damages claim). However, in view of Aurora's expressed intention not to proceed with the allegedly infringing portion of the ARR absent a favorable result in this litigation, Defendants could not even have established subject matter jurisdiction over an independent claim for declaratory judgment of infringement. *See Lang*, 895 F.2d at 764-65; *Geisha, LLC v. Tuccillo*, 525 F. Supp. 2d 1002, 1010-13 (N.D. Ill. 2007).

### C. Defendants' Infringement Claim Is Moot In View Of Aurora's Disclaimer Of Intent To Build Or Operate The ARR Without A Favorable Resolution To The Present Dispute.

Even assuming that Defendants ever had standing to assert a counterclaim for infringement, which they did not, subject matter jurisdiction would have been eliminated by Aurora's unequivocal representation that it will not construct the allegedly infringing ARR component if this Court finds that the asserted patents are not invalid, are enforceable, and their

patent claims cover the design of the proposed ARR. *See Sierra Applied Sciences, Inc. v. Advanced Energy Indus., Inc.*, 363 F.3d 1361, 1376 n.2 (Fed. Cir. 2004) ("Later events can eliminate jurisdiction that existed at the time of filing . . . "). Aurora's position is analogous to that of a patentee who covenants not to sue and then moves to dismiss an alleged infringer's declaratory judgment claim. *See Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1347-48 (Fed. Cir. 2007). Just as a promise not to sue can deprive a court of subject matter jurisdiction over a declaratory judgment claim, a promise not to infringe eliminates the court's jurisdiction with respect to a claim for infringement that has not yet occurred. As such, even if there were a justiciable controversy concerning Defendants' counterclaim at the time it was filed, there is no such controversy now.

## II. Evidence Relating To Infringement And Damages Theories Based On The Hypothetical Construction Or Operation Of The ARR Should Be Excluded.

As explained above in Section I, *supra*, Defendants have not alleged that they have suffered any damages resulting from any alleged infringement by the City or Garney. Instead, Defendants rely on hypothetical damages that they allegedly will suffer if the ARR is constructed. But because Aurora will not build the ARR if the Court determines that it will infringe valid and enforceable patents, infringement and damages theories that depend on Aurora's completion of the ARR are irrelevant, unfairly prejudicial, potentially confusing, and a complete waste of the Court's and the jury's time. *See* Fed. R. Evid. 402, 403.

Defendants seek damages limited to a reasonable royalty on cost savings that Aurora will allegedly realize by constructing and operating the ARR; Defendants do not seek lost profits or any other measure of damages. *See, e.g.,* Exh. D (Defendants' Rule 26(a)(1) Second Supplemental Disclosures dated May 21, 2009, identifying only reasonable royalty damages claims). More specifically, as explained above, Defendants' damages expert describes only two

"benefit streams" that he believes should be subjected to his proposed royalty rate: (1) purported construction cost savings that will be obtained by Aurora by constructing the ARR versus different purification facilities or techniques; and (2) allegedly reduced annual operating expenses associated with Aurora's use of the ARR when compared with use of other purification systems or facilities. *See id.* at 14-15. Obviously, neither of these streams will ever materialize if Aurora chooses not to construct the ARR. In other words, even under the damages theories advanced by Defendants' expert, their damages base will necessarily be zero. Application of *any* royalty rate to Defendants' proposed damages bases will not yield any damages, so there is no reason to present evidence of such "damages" at trial.

The City's decision to indefinitely defer or forego construction of the ARR pending resolution of this action renders Defendants' counterclaim moot, irrelevant, and therefore inadmissible under Fed. R. Evid. 402. Moreover, Defendants' infringement and damages evidence may mislead the jury by suggesting that because the (admittedly non-infringing) LPB has been built, Aurora will go forward with construction of the ARR regardless of the outcome of this case. *See* Fed. R. Evid. 403. Either suggestion could confuse the distinction between actual and hypothetical, speculative infringement alleged by Defendants, and thus either suggestion would be unfairly prejudicial to Aurora. *See id.* These considerations, in addition to the time that would be wasted by the presentation of irrelevant evidence, outweigh any purported probative value associated with infringement and damages evidence. *See id.* For these reasons, all evidence supporting Defendants' counterclaim, including expert and fact witness testimony and exhibits pertaining to alleged infringement and damages, should be excluded under both Rule 402 and Rule 403.

## **MEET AND CONFER CERTIFICATION**

Although D.C.COLO.LCivR 7.1A does not require parties to confer on motions filed pursuant to Federal Rule of

Civil Procedure 12, undersigned counsel certifies that on April 9, 2010, counsel for Aurora conferred with Defendants' counsel, who indicated that he objects to the relief sought in this Motion.

## **CONCLUSION**

For the reasons set forth herein, Aurora respectfully requests that Defendants' counterclaim for patent infringement be dismissed for lack of subject matter jurisdiction. In the alternative, Aurora respectfully requests that the Court enter an order excluding all testimony, exhibits and other evidence relating to Defendants' alleged damages.

Dated: this 12th day of April, 2010.

        BROWNSTEIN HYATT FARBER SCHRECK, LLP

        By:    s/ *Martha F. Bauer*
                Martha F. Bauer
                Ronald Gorsché
                Ashley Krause
                410 17th Street, Suite 2200
                Denver, Colorado 80202
                Telephone: 303. 223.1100
                Facsimile: 303.223.1111
                mbauer@bhfs.com
                rgorsche@bhfs.com
                akrause@bhfs.com

                ATTORNEYS FOR PLAINTIFF AND COUNTERCLAIM-DEFENDANT THE CITY OF AURORA AND COUNTERCLAIM-DEFENDANT

                                                                GRIMM CONSTRUCTION
                                                                COMPANY, INC. D/B/A GARNEY
                                                                CONSTRUCTION

## CERTIFICATE OF SERVICE

I hereby certify that on April 12th, 2010, I served the foregoing **MOTION TO DISMISS DEFENDANTS' COUNTERCLAIM FOR LACK OF SUBJECT MATTER JURISDICTION** via ECF upon the following:

Peter A. Gergely
Merchant & Gould
1050 17th St., Suite 1950
Denver, CO  80265-0100
pgergely@merchant-gould.com

By: s/ *Kerry O'Hanlon*
Kerry O'Hanlon