**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**CIVIL ACTION NO.: 07-CV-02371-PAB-BNB**

**CITY OF AURORA, COLORADO**, a municipal corporation,
acting by and through its Utility Enterprise, Aurora Water,

        Plaintiff and Counterclaim-Defendant,

and

**GRIMM CONSTRUCTION COMPANY, INC.,
d/b/a GARNEY CONSTRUCTION**, a Colorado corporation,

        Counterclaim-Defendant,

v.

**PS SYSTEMS, INC.,** a Colorado corporation, and
**RAR Group, LLC**, a Colorado limited liability company,

        Defendants and Counterclaimants.

---

**PS SYSTEMS, INC. AND RAR GROUP, LLC'S RESPONSE TO MOTION TO DISMISS DEFENDANTS' COUNTERCLAIM FOR LACK OF SUBJECT MATTER JURISDICTION**

---

PS Systems, Inc. and RAR Group, LLC ("PS Systems"), respond to the Motion to Dismiss Defendants' Counterclaim for Lack of Subject Matter Jurisdiction as follows.

**I.**   **SUMMARY OF ARGUMENT**

Aurora and Garney's motion should be denied.[1] The City of Aurora ("Aurora") and

---

[1] The motion is directed to subject matter jurisdiction, but is in fact an amalgam of several motions: a motion for summary judgment on the issues of liability and damages, which should have been filed before the October 7, 2008 dispositive motion deadline; a Fed. R. Civ. P. 37 motion to preclude evidence, which was neither raised since fact discovery closed on August 29, 2008, nor after damages discovery closed on May 29, 2009, nor the subject of a D.C.COLO.LCivR 7.1A conference; and a motion *in limine* to preclude evidence under Fed. R. Civ. 402 and 403 as irrelevant and prejudicial, which was never the subject of a D.C.COLO.LCivR 7.1A conference, and should be raised at trial because the issue is evidence driven. Because subject matter jurisdiction can be raised at any time,

1

Garney Construction ("Garney") have committed acts of infringement. Therefore, there is subject matter jurisdiction over PS Systems' counterclaim for patent infringement.

Aurora sought a declaratory judgment because it allegedly wanted a determination of its rights so that it could avoid infringement. Rather than refraining from infringement during the pendency of the lawsuit, Aurora forged ahead and induced infringement by soliciting its contractor, Garney, to submit a bid to build the infringing technology, which includes the aquifer recharge and recovery ("ARR") area. 35 U.S.C. § 271(b). Aurora also induced infringement by soliciting Garney to enter into a Construction Agreement to build the infringing technology. *Id.* Garney directly infringed by entering into the Construction Agreement to build the technology, which is an infringing sale and offer to sell, and by bidding the infringing technology, which is an infringing offer to sell. 35 U.S.C. § 271(a).

Upon learning of their infringement, PS Systems immediately counterclaimed against Aurora and Garney. PS Systems alleged the infringing acts in the counterclaim, specifically, Aurora's solicitation of Garney's bid, Garney's infringing bid, and Aurora and Garney's entry into the Construction Agreement for the infringing technology. Aurora's motion should be denied. While infringement is a question of fact for the jury to decide, the evidence shows that Aurora and Garney committed acts of infringement. Accordingly, there is subject matter jurisdiction over PS Systems' counterclaim.

Aurora's motion asserts several other arguments, none of which concern subject matter jurisdiction,[2] but attack PS Systems' damages. These arguments lack merit because Aurora and Garney's infringement entitles PS Systems to a reasonable royalty, which is the statutorily-mandated remedy for patent infringement, in other words, the minimum award or floor below

---

Aurora and Garney label their motion as such, however, regardless of title, the motion lacks merit.

2

which a damages award may not fall.  35 U.S.C. § 284.

The determination of a reasonable royalty is based on a "hypothetical negotiation" of a license between PS Systems and Aurora and Garney just before the time infringement began, which is no later than execution of the March 20, 2008 Construction Agreement.  The hypothetical negotiation assumes that the patents are valid and infringed, and that the parties are willing to enter into a license.  The amount of a reasonable royalty is a question of fact.  PS Systems' expert opines that the reasonable royalty is approximately $89 million.  Aurora and Garney's expert opines that a reasonable royalty is $531,000 to $708,000, but in any event, not zero.  The factual dispute between the parties and their experts is a question of fact for the jury.

## II.  FACTUAL BACKGROUND

### A.  Aurora and Garney Infringe During Pendency of Lawsuit

In November, 2005 and March, 2007, PS Systems placed Aurora on notice of the '710 and '218 patents, respectively, and their potential coverage of Aurora's proposed Prairie Waters Project.  Final Pretrial Order, p. 11, ¶ 10, dkt. # 110, 7/8/09.  Aurora sued PS Systems on November 9, 2007 for a declaration that Aurora's "intended ARR component of the Prairie Waters Project does not infringe any claims of the '710 [and '218 Patent]s."  Complaint, ¶¶ 29-37, dkt. #1, 11/9/07.

PS Systems moved to dismiss on grounds of lack of "case or controversy" sufficient to support declaratory judgment jurisdiction, in particular because "Aurora [was] not engaging in any present activity that could subject it to a claim of infringement."  Dkt. # 7, p. 13, 1/11/08.  PS Systems noted that the excerpted plan drawings it received from Aurora were labeled "preliminary" and "not for construction."  *Id.*  PS Systems cited case law that rejected

---

[2] To the extent that the Court wishes to address these arguments, PS Systems responds to them herein.

declaratory judgment jurisdiction based on unfinalized plans and undeveloped products. *Id.* at pp. 13-14. Aurora opposed, and filed a declaration from Peter Binney, Director of Aurora Water, stating that the preliminary plans had been "supplanted by final design drawings," that "ready-to-bid documents were transmitted to pre-qualified bidders in November, 2007," that "[i]n February, 2008, the City expects to award another $68 million in contracts for the ARR," and that "[t]he City plans to complete the Prairie Waters Project and begin its start-up process in the last quarter of 2010." Dkt. #18-1, ¶¶ 3 & 7, 1/31/08. The Court denied the motion to dismiss and held that there was a case or controversy. The Court relied on Mr. Binney's declaration, and found that "Aurora has engaged in meaningful preparation for using the ARR system in the Prairie Waters Project and that it has taken concrete steps to begin conducting the alleged infringing activity involving the ARR system." Dkt. #54, pp. 12 & 16.

Consistent with the purpose of a declaratory judgment action, Aurora should have refrained from infringement while the lawsuit was pending in order to avoid a claim for patent infringement. Instead, not only did Aurora take "concrete steps to begin conducting the alleged infringing activity involving the ARR," it forged ahead and actually infringed during the pendency of litigation with full knowledge of the patents.

Aurora infringed by soliciting bids for the infringing technology, including the North Well Field (which contains the alluvial wells that pump water from the ground next to the South Platte River and introduce the water to the slurry wall lined ARR); the ARR; and the recovery wells in the ARR that withdraw the water from the ARR. Aurora's bidding documents included:

 1. an Invitation To Bid describing the infringing Work: Ex. A, p. 13: "alluvial wells," "ARR," and "recovery wells;"

 2. a Specimen Construction Agreement specifying the infringing Work. Ex. A, p. 50, ¶ 1.01: "alluvial wells," "ARR," and "recovery wells;"

      3.      a Bid Form that included line items for the infringing technology: Ex. A, p. 21, ¶ 10.1 ("Bids shall be submitted on the forms provided by the City"); Ex. A, pp. 29-46, City of Aurora Bid Form; Ex. A, pp. 34-36 (North Well Field, including vertical wells, which are the alluvial wells), pp. 37-39 (ARR Site A, including Recovery Wells), Ex. A. p. 41 (Low Permeability Barrier, including slurry walls);

      4.      detailed specifications for the infringing technology. (Ex. A, pp. 115-163; Ex. A, p. 115: Work includes "alluvial wells," "ARR," and "recovery wells;" Ex. A, pp. 117-131: slurry walls; Ex. A, pp. 140-163 at page 142: alluvial wells and recovery wells); and

      5.      detailed drawings for the infringing technology. (Ex. A, pp. 165-67: alluvial wells; Ex. A, pp. 168-173: ARR, recovery wells, and slurry walls).

Garney responded with the winning bid to build the infringing technology. (Ex. B, Bid Form, A8382-A8414). Aurora and Garney then entered into a Construction Agreement to build the infringing technology, which included Garney's bid as an attachment. (Ex. B).

After close of fact discovery, Aurora produced a copy of the Construction Agreement on September 18, 2008. Answer and Counterclaim, Dkt. # 55, p. 8, ¶ 14, 10/3/08. Upon reviewing it, PS Systems immediately filed a counterclaim for patent infringement against Aurora and Garney, which also joined Garney to the case. *Id.* at pp. 6-10. PS Systems specifically alleged the acts of infringement: "Aurora solicited construction bids for the underground reservoir in November, 2007, including a bid from Garney;" that "Garney submitted a bid for construction of the underground reservoir;" that "[o]n or about March 20, 2008, Aurora and Garney entered into a written Construction Agreement to build the underground reservoir;" and that "[t]he construction price is $53,350,972.50." *Id.* at pp. 8-9, ¶¶ 13, 14 & 19. PS Systems alleged that "[b]y their actions alleged above, Aurora and Garney, both collectively and individually, have been and are infringing the '710 and '218 Patents, either ***directly***, contributorily ***or by inducing*** others to infringe the '710 and '218 Patents. *Id*. at p. 9, ¶ 23.

**III.    ARGUMENT**

    **A.    Subject Matter Jurisdiction Exists Because Acts of Infringement Have**

**Occurred**

**1.     Aurora Infringed by Inducing Garney's Infringement.**

Aurora's motion attacking subject matter jurisdiction asserts lack of standing, however, Aurora concedes that standing exists if an act of infringement occurred. Motion, pp. 8-9, citing *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339 (Fed. Cir. 2007). There are facts sufficient to indicate that an act of infringement, which is a question of fact for the jury, has occurred. *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 849 (Fed. Cir. 2010). Aurora infringed by inducing Garney's infringement. 35 U.S.C. § 271(b) ("Whoever actively induces infringement of a patent shall be liable as an infringer."). Inducement of infringement requires proof of direct infringement. *DSU Medical Corp. v. JMS Co.*, 471 F.3d 1293, 1304-05 (Fed. Cir. 2006) (en banc). Garney directly infringed by selling and offering to sell the patented invention. Sections III.A.2 and 3, *infra*. Inducement of infringement also requires proof that Aurora actually intended to cause the acts that constitute direct infringement, that Aurora knew of the patents, and that Aurora knew or should have known that its actions would lead to actual infringement. *Id*. Intent to cause the acts that constitute direct infringement may be demonstrated by evidence of active steps taken to encourage direct infringement, such as furnishing instructions on how to engage in infringing acts. *Id*. It is not necessary to show that Aurora has directly infringed, so long as Garney directly infringed. *Id*.

Aurora intended to cause the infringing acts because Aurora's bidding documents contained an Invitation to Bid, a draft Construction Agreement, a Bid Form, and detailed specifications and drawings specifying the infringing technology. The final Construction Agreement also specifies the infringing technology. Aurora knew of the patents. Section II.A, p. 3, *supra*. Aurora knew or should have known that its actions would lead to actual

infringement through Garney's sale and offer to sell the infringing technology to Aurora because that is precisely what Aurora solicited and obtained from Garney based on Aurora's Invitation to Bid, draft and final Construction Agreement, Bid Form, specifications and drawings. Additionally, Aurora agreed in the Construction Agreement to indemnify Garney from patent infringement, fees, and royalties arising from the PS Systems' patents.  Ex. B, A8312.

## 2. **Garney Infringed by Selling the Infringing Technology to Aurora**

By entering into the Construction Agreement with Aurora, Garney infringed by selling the patented technology to Aurora.  35 U.S.C. § 271(a) ("whoever without authority makes, uses, **offers to sell, or sells** any patented invention, within the United States, or imports into the United States any patented invention during the term of the patent therefore, infringes the patent.") (emphasis added).  The statutory term "sell" includes entering into a contract to sell. *NTP, Inc. v. Research in Motion*, *Ltd.*, 418 F.3d 1282, 1319 (Fed. Cir. 2005).  The term "sale" is given its "ordinary meaning." *Id.*  "The definition of 'sale' is: '1. The transfer of property or title for a price. [or] 2. The agreement by which such a transfer takes place.  The four elements are (1) parties competent to contract, (2) mutual assent, (3) a thing capable of being transferred, and (4) a price in money paid or promised.'"  *Id.* (citing *Black's Law Dictionary* 1337 (7th ed. 1999)); *Fellowes, Inc. v. Michilin Prosperity Co.*, 491 F. Supp. 2d 571, 577 (E.D. Va. 2007) (citing *NTP* definition of sale); *id.* at 579 (contracts are element of a 'sale' occurring 'within the United States,'" citing § 271(a) and *NTP,* 418 F.3d at 1319); *id.* at 580 (acceptance of price offered in a quote sheet is a "sale.").

All four elements are present.  First, Aurora and Garney are competent to contract. Second, there has been mutual assent to enter into the Construction Agreement.  Third, there is a thing capable of being transferred, namely, the North Campus facility "Work" that is the subject

7

matter of the Construction Agreement, and which includes the infringing technology. Ex. B, A8194, § 1.01 ("Work" includes "alluvial wells," "ARR," and "recovery wells."); Ex. B, A8237, ¶55 ("Work – The entire construction or the various separately identifiable parts thereof to be provided under the Contract Documents..."). Title to the "Work" transfers from Garney to Aurora upon payment. Ex. B, A8271, ¶ 14.03, Contractor's Warranty of Title ("Contractor warrants and guarantees that title to all Work, materials, and equipment … will pass to the City no later than the time of payment …"). Accordingly, the Work, i.e. the North Campus facility, is a thing capable of being transferred by Garney to Aurora. Fourth, the parties agreed to a price of $53,350,972.50 for the Work. Ex. B, A8197, ¶ 6.01.

Aurora's legally and factually unsupported argument that there is no contract for the ARR (Motion, pp. 9-10) should be rejected. In fact, there is an agreement to build the entire project, including the ARR, for $53,350,972.50. Aurora can later delete the ARR portion of the contract, but has not done so. Indeed, the Construction Agreement states that "[t]he Work consists of constructing the North Campus facility in its entirety," and that "[c]onstruction of the project components associated with the ARR will be sequenced to allow the City the **opportunity to delete** the Bid Form Part C (ARR Site A) and/or Bid Form Part E (LPB) from the project if a satisfactory resolution of these patent issues can not be reached with the patent claimants." (Ex. B, A8194, ¶ 1.01 (emphasis added). The agreement states that "time is of the essence," sets a date of September 28, 2010 for Substantial Completion of the ARR, and states that "[a] separate written authorization **will be given** for this work." Ex. B, A8195-96, ¶¶5.01 & 5.02 (emphasis added). The lack of a specific date for Aurora to furnish a notice to proceed with the ARR does not prevent formation of a valid contract; a reasonable time to perform is implied

by law.[3]  *Ranta Construction, Inc. v. Anderson*, 190 P.3d 835, 841 (Colo. App. 2008).

There is a contract to build the ARR.  Alternatively, there is a binding contract subject to a condition subsequent (satisfactory resolution of patent issues), that would terminate Aurora's duty to perform, but which has not yet occurred. E. Allan Farnsworth, Contracts § 8.2, at 541 (1982).  Even if there is a condition precedent or subsequent concerning the duty to perform, the parties have still entered into a binding contract that simply contains a condition to the duty of performance, but not a condition to contract formation.  *Id.* at § 8.2, at 540-41 ("If parties make a contract under which neither has a duty to perform until the occurrence of some event, such as the raising of a stated amount of capital or the approval of a third person, that event is a condition of the duty of each party.  **Both parties are bound**, although neither will have to perform if the event does not occur.") (emphasis added).

### 3. Garney Infringed by Offering to Sell the Infringing Technology to Aurora.

Garney also infringed by offering to sell the infringing technology to Aurora by submitting a bid for the infringing technology and entering into the Construction Agreement.  An infringing offer to sell is "a description of the allegedly infringing merchandise and the price at which it can be purchased."  *3D Systems, Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1379 (Fed. Cir. 1998) (price quotation letters are offers to sell).  Infringing offers to sell are prohibited because the patent laws condemn "generating interest in a potential infringing product to the commercial detriment of the rightful patentee."  *Id.*  Indeed, the Federal Circuit upheld infringement and damages against an infringer that offered for sale an infringing product, but ultimately delivered a non-infringing product, which the court deemed a "bait-and-switch."

---

[3] Aurora argues that settlement of litigation is a "condition precedent" to construction of the ARR, Motion p. 9, however conditions precedent are disfavored under Colorado law, and a contract clause will be interpreted as a promise, unless there is clear and unequivocal language establishing a condition precedent. *Main Elec., Ltd. v. Printz Services Corp.*, 980 P.2d 522, 526-27 (Colo. 1999).  If there is any doubt, the clause is interpreted as a

*American Seating Co. v. USSC Group, Inc.*, 514 F.3d 1262, 1270 (Fed. Cir. 2008).  The evidence at trial will show that Garney offered to sell the infringing technology to Aurora by describing the infringing Work in the Construction Agreement and attached completed Bid Form.  Ex. B, A8194, § 1.01 & A8382-A8414.  Garney also offered a price at which the Work, including the infringing technology, could be purchased.  Ex. B, A8197, ¶ 6.01 ($53,350,972.50 price for Work); Ex. B, A8234, ¶ 1.01(5):  "Bid – The offer or proposal of a Bidder submitted on the prescribed form setting forth the prices for the Work to be performed."

*FieldTurf, Int'l, Inc. v. Sprinturf, Inc.*, 433 F.3d 1366 (Fed. Cir. 2006) and *Natare Corp. v. Aquatic Renovation Sys., Inc.*, 99 F. Supp. 2d 986 (S.D. Ind. 2000), cited by Aurora, are distinguishable on their facts.  (Motion, p. 10).  In *FieldTurf*, there was no infringing offer to sell because the contractor had in fact always intended to offer to sell its own non-infringing technology, SportFields, and not the patented FieldTurf technology, which facts were proven through parol evidence of pre-bid communications.  433 F.3d at 1370.  The Court also deemed significant the fact that the initial RFP was withdrawn, all bids were rejected, and the project was re-bid in a format that did not specify the infringing technology.  *Id.*  Similarly, in *Natare*, the bid documents were ambiguous; parol evidence showed that the bid documents specified non-infringing technology, which the contractor in fact bid.  99 F. Supp. 2d at 992-93.

These facts are not present here.  Aurora specified infringing technology in the Invitation to Bid, Bid Form, draft Construction Agreement, and specifications and drawings; Aurora received and accepted an infringing bid from Garney; and Aurora and Garney entered into a Construction Agreement for the infringing technology, which also indemnified Garney from patent infringement liability and royalties arising from the patents-in-suit.  Further, Aurora has

---

promise.  *Id.*  Here, there is no clear language of a condition precedent.

not rejected all bids and re-bid the project to eliminate the infringing technology. Instead, Aurora has kept Garney under contract to build the infringing technology at a not-to-exceed price. While the Construction Agreement would allow Aurora to "the opportunity to delete" the ARR portion of the project, Aurora has not done so. To date, Aurora can issue a notice to proceed to Garney to build the ARR, and Garney would be obligated to do so. Aurora's reasons for not deleting the ARR portion of the contract are unknown. Perhaps Aurora likes the contract price for the ARR and will build the ARR because of its features and benefits. Aurora's Director of Water, Peter Binney, described the "lined slurry trench aquifer recharge and recovery [ARR] areas" as "the most important elements" of Aurora Water's North Campus operations. Ex. C, A14096.

Aurora is trying to play both sides. An Aurora employee, Mark Pifher,[4] states that Aurora will not build the ARR if it is held to infringe a valid, enforceable patent, but on the other hand, Aurora has kept Garney under contract to build the ARR by refusing to delete the ARR portion of the Construction Agreement. U.S. law pierces through this type of gamesmanship and provides a remedy for an infringing contract to sell and offer to sell, as well as against entities, such as Aurora, that induce infringement.

Acts of infringement have occurred, subject matter jurisdiction exists, and the motion should be denied. Aurora remaining arguments have nothing to do with subject matter jurisdiction. If the Court wishes to address these arguments, PS Systems responds as follows.

### B. Reasonable Royalty is the Minimum Floor Below Which a Damages Award May not Fall

The fact of Aurora and Garney's infringement establishes the fact of PS Systems'

---

[4] Given the inability of Aurora's employees and attorneys to obtain City Council approval of the September, 2009 settlement, query whether Mr. Pifher has any authority to bind Aurora to the statements in his affidavit. Notably, he

11

damages, in this case, a reasonable royalty, because PS Systems' right to exclude has been violated. *Dow Chemical Co. v. Mee Industries, Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003) (citation and quotation omitted); 35 U.S.C. § 284. PS Systems' right to a reasonable royalty is "unequivocal" under the statute. *Dow*, 341 F.3d at 1381. A reasonable royalty is the minimum award, or the "floor" below which damages may not fall. *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1326 (Fed. Cir. 1987). A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to make, use, or sell the claimed invention. A reasonable royalty is the royalty that would have resulted from a hypothetical negotiation between the patent owner, in this case, PS Systems, and entities in the position of Aurora and Garney, taking place just before the infringement began. It is assumed that both parties to that negotiation understood the patent to be valid and infringed and were willing to enter into a license. *See generally* AIPLA Model Patent Jury Instructions 12.15 (2008); *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120-21 (S.D.N.Y. 1970); *Hanson v. Alpine Valley Ski Area*, 718 F.2d 1075, 1079 (Fed. Cir. 1983) (affirming reasonable royalty of one-third of estimated cost savings based on license that would have been hypothetically negotiated between the patent owner and the prospective user of the invention as of the date the infringement began; royalty calculated on prospective use rather than actual use).

PS Systems' damages expert Robert Kleeman opines that at the time infringement began, the parties would have hypothetically negotiated an up-front reasonable royalty of approximately $89 million based on estimated cost savings of prospective use of the infringing technology versus non-infringing technology. (Ex. D). Aurora's expert disagrees and states that a

---

does not claim any authority to bind Aurora City Council.

12

reasonable royalty is $531,000 to $708,000, but not zero. (Ex. E). The amount of a reasonable royalty is an issue of fact. *Micro Chemical Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1394 (Fed. Cir. 2003).

  **C. Aurora's Discovery Argument Lacks Merit**

  Aurora assertion that it lacked discovery of PS Systems' allegations should be rejected. (Motion, p. 9). Early in the case, and before Aurora infringed, PS Systems objected and responded to Aurora's contention interrogatories on PS Systems' infringement "claim" by stating that "according to Plaintiff's complaint, Plaintiff has not yet built any apparatus or practiced any method that would infringe," and then identifying the certain elements that would be in the proposed system, if it were built, in response to Aurora's denial that these certain elements were missing from the proposed design. (Ex. F, pp. 2-4). During discovery, PS Systems' technical expert, Christopher Lidstone, served an expert report opining that Aurora's proposed system infringed both patents and furnished a detailed, technical claim chart that demonstrated infringement on an element-by-element basis. (Ex. G, ¶ 5.1 & Att. F). Aurora deposed Mr. Lidstone. PS Systems also specifically described the infringing acts in its counterclaim. Section, II.A, p. 5, *supra*. Neither Aurora, nor Garney sought additional liability discovery, but only took damages discovery. PS Systems served its expert report on damages on March 31, 2009. Mr. Robert Kleeman calculated a reasonable royalty as of the date infringement began pursuant to a hypothetical negotiation between the patent owner and the infringer. (Ex. D). Before serving a rebuttal expert report on damages, Aurora and Garney took Mr. Kleeman's deposition, where he stated that the he assumed that the date of infringement, and therefore the date of the hypothetical negotiation was, at the earliest, the date Aurora solicited the infringing bids (November, 2007), but no later than the date of the Construction Agreement

(March 20, 2008). (Ex. H, pp. 157-59).

Aurora and Garney's discovery argument lacks merit in light of Mr. Lidstone's detailed technical claim chart, PS Systems' detailed allegations of the acts of infringement in its counterclaim, and Mr. Kleeman's report and deposition, which in fact supplement PS Systems' prior interrogatory answer. Supplementation is not required when, as here, the facts have "otherwise been made known to [Aurora and Garney] during the discovery process or in writing." Fed. R. Civ. P. 26(e).

### D. There is Past and Current Infringement

Aurora seeks to style PS Systems' claim as one for "future" infringement. (Motion, p. 11). PS Systems' counterclaim is based on Aurora's solicitation of Garney's bid, Garney's bid in response to Aurora's solicitation, and the entry into the Construction Agreement. These infringing acts all occurred in the past, and are ongoing because Garney is still under contract to build the ARR.[5] Aurora simply has to notify Garney to build the ARR, and Garney must do so.

### E. PS Systems' Counterclaim is Not Moot

Mark Pifher's affidavit does not "moot" PS Systems' counterclaim because infringement has already occurred. (Motion, pp. 12-13). The affidavit is not like an unconditional "covenant not to sue" for patent infringement that moots declaratory judgment jurisdiction. *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1057 & 1059 (Fed. Cir. 1995).[6] Aurora's argument is not a recognized legal theory, and also contradicts the Court's previous finding that

---

[5] Aurora's reliance on a snippet of Mr. Kleeman's deposition as evidence of non-infringement is misleading. (Motion, p. 11). Mr. Kleeman is not an infringement expert, but a damages expert, and assumed that infringement had occurred for purposes of calculating a reasonable royalty. (Ex. D, p. 1, Ex. H, pp. 119, 135-36, 147, 216). Mr. Kleeman assumed that the date of infringement, and therefore the date of the hypothetical negotiation was, at the earliest, the date Aurora solicited the infringing bids (November, 2007), but no later than the date of the Construction Agreement (March 20, 2008). (Ex. H, pp. 157-59).
[6] Mr. Pifher's affidavit is conditional. He states that Aurora reserves the right to build the system "if" the design does not infringe the patents-in-suit. Again, Aurora wants to play both sides.

14

"Aurora has engaged in meaningful preparation for using the ARR system in the Prairie Waters Project and that it has taken concrete steps to begin conducting the alleged infringing activity involving the ARR system." Dkt. #54, pp. 12 & 16. More importantly, Aurora actually infringed. Mr. Pifher's affidavit does not and cannot change that fact.

  F. **Evidence of Infringement and Damages Should Not Be Excluded**

Aurora's lastly seeks to exclude, as irrelevant and unfairly prejudicial, evidence of infringement and damages, by asserting that such evidence is "hypothetical." (Motion, p. 13). There is nothing hypothetical about Aurora and Garney's infringement – it happened. A reasonable royalty is the statutorily-mandated remedy for Aurora and Garney's infringement. A reasonable royalty, by its nature, is based on a hypothetical negotiation just before infringement began. Further, as explained above, a reasonable royalty based on estimated cost savings based on prospective use is a reasonable method of calculating a reasonable royalty that has been accepted by the Federal Circuit. *Hanson*, 718 F.2d at 1080-81; *see also Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1384-85 (Fed. Cir. 2001) (relying on infringer's business plan and projections for future sales prepared two months before infringement began).

**IV.** **CONCLUSION**

Aurora and Garney's motion should be denied.

Dated this 3rd day of May, 2010.

              *s/Peter A. Gergely*
              Peter A. Gergely
              Merchant & Gould P.C.
              1050 17th Street, Suite 1950
              Denver, CO 80265-0100
              Tel: 303-357-1670
              Fax: 303-357-1671
              pgergely@merchantgould.com

            Attorneys for Defendants and Counterclaimants

PS Systems, Inc. and RAR Group, LLC

### **CERTIFICATE OF SERVICE**

   I hereby certify that on May 3, 2010, I served the foregoing **DEFENDANTS AND COUNTERCLAIMANTS PS SYSTEMS, INC. AND RAR GROUP, LLC'S RESPONSE TO MOTION TO DISMISS DEFENDANTS' COUNTERCLAIM FOR LACK OF SUBJECT MATTER JURISDICTION** by ECF upon the following:

Martha M. Bauer
Ronald Gorsché
Ashley Krause
Brownstein Hyatt Farber Schreck, LLP
410 17th Street, Suite 2200
Denver, CO  80202
mbauer@bhfs.com
rgorsche@bhfs.com
akrause@bhfs.com

              *s/Kristina Kehoe*
              Kristina Kehoe