**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 07-CV-02371-PAB-BNB

CITY OF AURORA, Colorado, a municipal corporation,
acting by and through its Utility Enterprise, Aurora Water,

       PLAINTIFF AND COUNTERCLAIM-DEFENDANT,

and

GRIMM CONSTRUCTION COMPANY, INC.
d/b/a GARNEY CONSTRUCTION, a Colorado corporation,

       COUNTERCLAIM-DEFENDANT,

vs.

PS SYSTEMS, INC., a Colorado corporation,
and RAR GROUP, LLC, a Colorado limited
liability company,

       DEFENDANTS AND COUNTERCLAIMANTS.

---

**REPLY IN SUPPORT OF MOTION TO DISMISS DEFENDANTS' COUNTERCLAIM
FOR LACK OF SUBJECT MATTER JURISDICTION**

---

       Plaintiff and Counterclaim-Defendant, the City of Aurora, acting by and through its

Utility Enterprise, Aurora Water (the "City"), and Counterclaim-Defendant Grimm Construction

Company, Inc. d/b/a Garney Construction ("Garney," and collectively, with the City, "Aurora"),

respectfully submit the following reply in support of their Motion to Dismiss Defendants'

Counterclaim for Lack of Subject Matter Jurisdiction [Dkt. No. 149] (the "Motion").

### INTRODUCTION

       In their response to the Motion, Defendants effectively concede that the infringement

theory they have advanced throughout discovery—that the Aquifer Recharge and Recovery

facility (the "ARR"), if completed, would infringe Defendants' patents—is not sufficient to

satisfy the standing requirement of Article III.  In a last-ditch effort to preserve their

counterclaim for trial, Defendants now assert two new theories of infringement based on bid and

contract documents relating to the construction of the ARR.  But because any "sale" or "offer" of

Garney's construction services could not have included the ARR, Defendants' infringement claim

fails as a matter of law.  As such, Defendants' counterclaim should be dismissed for lack of

subject matter jurisdiction.  In the alternative, because Defendants have still not identified any

injury suffered as a result of an alleged sale or offer to sell, evidence of Defendants' supposed

damages is irrelevant and should therefore be excluded.

## ARGUMENT

I.      **Defendants' New Infringement Theories Are Meritless and Untimely.**

A.      **There Has Been No "Sale" Of An Allegedly Infringing System.**

Defendants' theory of infringement by a purported "sale" of the ARR—which is based

entirely on the Construction Agreement (the "Agreement") executed by the City and Garney—

ignores both the substance of the transaction intended by the parties and the case law requiring

more than a mere contract to constitute a sale.  Put simply, there was no "sale" that included the

ARR.

As an initial matter, the Agreement is not a contract for the "sale" of anything that could

plausibly be construed as the purported invention.  By its terms, the Agreement is for

"professional construction services" to be provided by Garney.  (*See* Defs.' Br., Exh. B, A8194,

"Recitals.")  Although Defendants mischaracterize the "Work" described in the agreement as

including finished ARR components, Defendants nevertheless acknowledge that "Work" is

defined to include <u>only</u> the <u>construction</u> of various facilities.  (*See id.*; Defs.' Br. 8.)  Thus, as

evidenced by the Agreement, Aurora clearly contemplated a transaction by which Garney, as

general contractor, would provide construction services, which are not "a thing capable of being transferred." (*See* Defs.' Opp. Br. 7 (citing the definition of "sale" in *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1319 (Fed. Cir. 2005).)[1]

Moreover, there is no dispute that the ARR has not been constructed. Something that does not yet exist is not a thing capable of being transferred. *See Rotec Indus., Inc. v. Mitsubishi Corp*, 215 F.3d 1246, 1252 n.2 (Fed. Cir. 2000) ("one may not be held liable under § 271(a) for 'making' or 'selling' less than a complete invention"); *B.F. Goodrich v. Aircraft Braking Sys. Corp.*, No. 91-CV-48, 1994 WL 16019986, at *5 (D. Del. Nov. 10, 1994) (noting that there cannot be a sale of "a thing which has not yet fully come into existence"); *Ecodyne Corp. v. Croll-Reynolds Eng'g Co.*, 491 F. Supp. 194, 197 (D. Conn. 1979) ("[I]n order for there to have been a sale within the meaning of 35 U.S.C. § 271(a), the entire apparatus must have been constructed and ready for use.").

As Aurora explained in its Motion, the Prairie Waters bid documents and the resulting Agreement expressly conditioned construction (and thus any purported sale) of the ARR on a "satisfactory resolution" of the present dispute. In other words, the express terms of the parties' agreement excluded the ARR from the contract unless and until this case is resolved in a manner that the City deems favorable. Although Defendants try to brush aside this provision of the Agreement as a "condition precedent," improperly relying on Colorado law,[2] Defendants' characterization does not change the fact that the City and Garney never intended a sale that would include an infringing system. To the contrary, they carefully contracted to avoid such a

---

[1] Also, because the City has not authorized Garney to proceed with construction of the ARR, the City has not paid Garney for that work, and thus there has been no "price in money paid." (*See* Defs.' Br. 7.) Similarly, there has been no "price . . . promised" because the City is not obligated to pay Garney for constructing the ARR unless and until the City provides authorization to proceed with that construction. (*See id.*)

[2] *See 3D Systems, Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1379 (Fed. Cir. 1998) ("Defining the contours of the tort of infringement . . .entails the construction of the federal statute and not a state's common or statutory law.")

"sale," and thus there cannot have been a contract for an infringing sale.  To hold otherwise would ignore the circumstances and substance of the transaction and unfairly punish Aurora for taking extraordinary measures to ensure that it would not infringe the patents-in-suit.  *See FieldTurf Int'l, Inc. v. SprinTurf, Inc.*, 433 F.3d 1366, 1369-70 (Fed. Cir. 2006).

Defendants ultimately rely on standard-form provisions in the contract documents that provide for the transfer of title to the Work from Garney to the City upon payment for the Work.[3] This argument fails for at least two reasons.  First, the application of a title to services performed by Garney, as purportedly required by the Contractor's Warranty of Title (part of the "General Conditions"), makes no sense.  (*See* Defs.' Br., Exh. B, A8271, § 14.03.)  Fortunately, the Agreement expressly contemplates such inconsistencies and provides that they be resolved in favor of the Agreement (*See* Defs.' Br., Exh. B, A8203, §9.02.B.)  More specifically, since §14.03 of the General Conditions (Contractor's Warranty of Title) is inconsistent with the Agreement (a services contract with no provision for transfer of goods) the Agreement takes precedence, and §14.03 is a null provision.  In other words, by the express terms of the Agreement, the provision relied on by Defendants for the transfer of title to the Work does not apply.  Second, even if title to the Work could pass to the City, the ARR components are not included in the Agreement's definition of Work unless and until they are authorized by the City.  (*See id.* at §7.03(C)(5), A8199.)  Thus, title to any Work performed by Garney would not include title to the ARR components.

In any event, the execution of the Agreement, without more, does not constitute a "sale" for purposes of § 271(a).  *See Transocean Offshore Deepwater Drilling, Inc. v. Stena Drilling*

---

[3] Notably, Defendants do not argue that title to the ARR has actually passed from Garney to the City, which would require payment for that portion of the Work even under Defendants' reading of the contract.  Instead, Defendants argue only that the inclusion of the title provisions in the contract documents are sufficient to render the contract itself a "sale" for purposes of §271(a).

*Ltd.*, No. H-08-3287, 2009 U.S. Dist. LEXIS 52374, at *11 (S.D. Tex. June 22, 2009) ("No infringing liability arises from a party merely 'contracting to make infringing devices, or even beginning construction of infringing devices.'") (citations omitted); *Quality Tubing, Inc. v. Precision Tube Holdings Corp.*, 75 F. Supp. 2d 613, 621 (S.D. Tex. 1999) (noting that performance of the contract is also required). Indeed, despite the fact that Defendants acknowledge that a contract is only one element of a potentially infringing sale (Defs.' Br. 7), Defendants fail to identify any additional elements that, when combined with the Agreement, could potentially constitute an alleged sale.

### B.   Aurora Has Not "Offered To Sell" An Allegedly Infringing System.

Defendants' offer for sale theory of infringement boils down to the argument that the bid documents submitted by Garney to the City included a description of the ARR and the amount Garney was willing to accept from the City in order to construct it. Even assuming that Garney's offer of professional construction services was somehow an offer to sell certain ARR components—which, as explained above in Section I.A, it was not—Defendants ignore all other circumstances of Garney's bid, including the conditional language contained in the bid documents that clearly expressed the City's intent to avoid infringing the patents-in-suit. Defendants' approach is inconsistent with a long line of Federal Circuit and district court precedent analyzing an alleged offer for sale—for jurisdictional purposes or otherwise—in view of the substance of the transaction contemplated by the parties.

Although Defendants attempt to distinguish the *FieldTurf* case, that decision is controlling. There, the defendant submitted a bid to install a synthetic athletic field in response to a request for proposal (RFP) from a school district. Notwithstanding the fact that the RFP explicitly specified the use of a competitor's patented product, the Federal Circuit refused to

disturb the district court's holding that, based on all the surrounding circumstances, the defendant's bid, although an offer to sell, was not an offer to sell the patented product. *FieldTurf*, 433 F.3d at 1370. In so holding, the court declined to restrict its analysis to the four corners of the bid documents when both the defendant and the school district knew that, when built, the athletic field would not include the allegedly infringing product. *Id.*; *see also Natare Corp. v. Aquatic Renovation Sys., Inc.*, 99 F. Supp. 2d 986, 991 (S.D. Ind. 2000).[4]

Similarly, in this case, the City never intended to build an infringing system, and Garney was aware of the City's position at all times. But unlike the bid documents at issue in *FieldTurf*, Garney's bid clearly disclaimed any intent to proceed with construction of a system found to infringe the patents-in-suit. (*See, e.g.*, Pl.'s Mot., Exh. A, p.3, §1.01.) Defendants argue that the relevant bid and contract documents executed by Garney and the City are distinguishable from those in *FieldTurf* because the Aurora documents supposedly "specified infringing technology." But that is precisely the argument made by the patentee and rejected by the Federal Circuit in *FieldTurf*. The only meaningful difference between the two cases is that the bid in *FieldTurf* "did not contain the required statement that the bid product differed from the specifications," while Garney's bid <u>did</u> include language that indicated that Aurora would not infringe. And although Defendants take issue with the fact that the City has not deleted construction services for the ARR portion of the project, there is no reason to do so when the contract effectively treats such services as deleted until the City authorizes Garney to proceed.[5]

---

[4] In *Natare*, the district court held, based on the totality of the facts in the case, that the defendant did not offer to perform a pool installation using a patented termination method and therefore did not offer to sell the plaintiff's patented system. The court found that the defendant made it quite clear before submitting its bid that it could not and would not perform the patented method. *Natare*, 99 F. Supp. 2d at 991. On that evidence, the court concluded that it would be unfair and contradict the case law placing substance above form to conclude that the defendant had infringed the plaintiff's patent based upon an offer to sell. *Id.*

[5] Curiously, within the space of a single paragraph, Defendants abandon their attempt to distinguish *FieldTurf* and then suggest that Aurora is lying about its intentions with respect to the ARR. (*See* Defs.' Br. 11.) In any event, the

In relying almost exclusively on *3D Systems,* Defendants ignore the fact that "*3D Systems* . . . is not the Federal Circuit's final word on the subject." *See Moldflow*, 296 F. Supp. 2d at 42. After the Supreme Court ruled that courts should apply norms of traditional contract law in the context of the on-sale bar of § 102(b), the Federal Circuit applied the same analysis to allegedly infringing offers for sale under § 271(a). *See Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1254-55 (Fed. Cir. 2000) (citing *Pfaff v. Wells Elecs. Inc.*, 525 U.S. 55 (1998)).[6] In *Rotec*, the court looked to "traditional sources of authority," *id.* at 1255, and concluded that there was no evidence that any defendant "communicated a 'manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'" *Id.* at 1257 (quoting the Restatement (2nd) of Contracts § 24 (1979)).

Subsequent cases continued to apply general contract principles to evaluate alleged offers for sale. *See, e.g.*, *Linear Tech. Corp. v. Micrel, Inc.*, 275 F.3d 1040, 1050 (Fed. Cir. 2001) ("manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent"); *Group One, Ltd. v. Hallmark Cards, Inc.* 254 F.3d 1041, 1048 (Fed. Cir. 2001) ("Only an offer which rises to the level of a

---

statement that Defendants attribute to the City's former Director of Water, Peter Binney, was actually prepared by the publisher of the article attached to Defendants' brief as Exhibit C. Defendants' further suggestion that "[a]n Aurora employee, Mark Pifher"—who happens to be the current Director of Water—may not speak for the City is groundless. Aurora Water institutes numerous change orders and enters into many contracts without City Council approval.

[6] Although the *Rotec* court found the court's analysis in *3D Systems* consistent with its own analysis, subsequent decisions have recognized a conflict between the two. *See, e.g.*, *Moldflow Corp. v. Simcon, Inc.*, 296 F. Supp. 2d 34, 43 (D. Mass. 2003) (concluding that, because the Federal Circuit's interpretation of § 271(a) in *3D Systems* did not rely on "norms of traditional contract analysis," as required under *Rotec*, *3D Systems* was not controlling); *Designing Health, Inc. v. Erasmus*, No. CV 98-4758, 2002 WL 34536686, at *12 (C.D. Cal. Feb. 26, 2002) (finding that result in *3D Systems* is limited to questions of personal jurisdiction); *Wafios Mach. Corp. v. Nucoil Indus. Co.*, 2004 U.S. Dist. LEXIS 13674, at *12 (S.D.N.Y. 2004) (noting that district courts have recognized a conflict between the two opinions).

commercial offer for sale, one which the other party could make into a binding contract by simple acceptance . . . , constitutes an offer for sale under § 102(b).").

Applying traditional contract principles to this case, there has been no offer to sell an allegedly infringing system.  Because the City retained sole discretion to decide whether to proceed with construction the ARR, Garney had (and still has) no power to sell the ARR construction services or components to the City.[7]  Accordingly, Garney's purported "offer" could not create the power of acceptance necessary to constitute a commercial offer for sale.  *See, e.g.*, *Moldflow Corp. v. Simcon, Inc.*, 296 F. Supp. 2d 34, 43 (D. Mass. 2003).  Thus, under general contract principles, Garney did not offer to sell the ARR.  *Id.* at 44.

### C.   Defendants Cannot Invent New Arguments To Save Their Counterclaim.

Defendants disclosed their new infringement theories for the first time when counsel for the parties met and conferred in connection with Aurora's Motion.[8]  Defendants made no mention of allegedly infringing sales or offers for sale in their discovery responses and expert reports, and none of their damages disclosures suggest any injury based on these theories.  (*See* Pl.'s Mot. 6-7.)  In particular, Aurora relied on Defendants' statements in their interrogatory responses that the ARR would allegedly infringe "if built."  (*See* Pl.'s Mot. 6; Pedigo Dep., Exh. A, 76:15-77:3.) Defendants' Answer and Counterclaim [Dkt. No. 55] merely identifies a claim for infringement generally but does not specifically allege infringement under a sale or offer for sale theory.  Nor did Defendants identify these theories in the Final Pretrial Order.  (*See* Dkt. No.

---

[7] Logically, Garney cannot have promised to build the ARR when the City specifically recited the terms on which they were allowed to make that promise.  Garney had no freedom to offer terms of an agreement because the City was clearly directing how the promise and acceptance was going to be structured.

[8] Defendants' assertion that they "immediately" counterclaimed against Aurora "[u]pon learning of their [alleged] infringement" is misleading.  In fact, Defendants merely filed a counterclaim for infringement along with their Answer 15 days after the Court denied their Motion to Dismiss, as required by the Federal Rules of Civil Procedure. The initial set of "bidding documents" that Defendants identify as providing a basis for their "offer" and "sale" theories were produced by Aurora to Defendants on June 16, 2008. (*See* Exh. B.)  Defendants' counterclaim was not filed until October 3, 2008.

110.)  Defendants raise these theories now only in response to Aurora's Motion.  Such tactics are

inconsistent with the Federal Rules of Civil Procedure and should not be allowed.  *See* Fed. R.

Civ. P. 37(c)(1); *New Jersey Carpenters Pension & Annuity Funds v. Biogen IDEC Inc.*, 537

F.3d 35, 57 (1st Cir. 2008) (explaining that new theories first produced in response to a motion to

dismiss undercut the need for clarity and specificity in securities cases).

## II.   Defendants Have Failed To Identify Any Damages Caused By An Alleged Sale Or Offer To Sell.

Damages for infringement—even if based on a reasonable royalty—are recoverable only

to the extent that they result from the alleged infringement.  *See Aro Mfg. Co. v. Convertible Top*

*Replacement Co.*, 377 U.S. 476, 504-505 (1964) ("[T]he statute allows the award of a reasonable

royalty, or of any other recovery, only if such amount constitutes 'damages' for the

infringement."); *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 654-55 (1983) ("Congress

sought to ensure that the patent owner would in fact receive full compensation for 'any damages'

he suffered as a result of the infringement."); *King Instruments Corp. v. Perego*, 65 F.3d 941,

947 (Fed. Cir. 1995) ("[Section 284's] broad language awards damages for any injury as long as

it resulted from the infringement.") (emphasis added).[9]  In short, there must be a causal

connection between the alleged infringement and any damages claimed by the patentee.

Defendants have alleged no such connection.  Allegations that Aurora infringed the

patents-in-suit by selling or offering to sell[10] the purported invention simply cannot support a

---

[9] The cases cited by Defendants are not to the contrary.  Neither contains any indication that damages were based on anything other than an infringing act.  *See Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1380-81 (Fed. Cir. 2003) (no indication that reasonable royalty would be based on anything other than infringing use); *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1326 (Fed. Cir. 1987) (reasonable royalty based on infringing sales).

[10] Notably, Defendants rely on a case that awarded lost profits, and not a reasonable royalty, and even that award was based on the actual sales resulting from a bait-and-switch offer for sale.  (Defs.' Br. 9-10 (citing *Am. Seating Co. v. USSC Group, Inc.*, 514 F.3d 1262, 1270 (Fed. Cir. 2008).)  *Cf. FieldTurf*, 433 F.3d at 1370 (suggesting that damages for an offer for sale can be avoided if no sale is completed).  Defendants fail to cite any precedent for awarding a reasonable royalty on an infringement theory based solely on an "offer to sell" under § 271(a).

damages claim based on Aurora's alleged making and using allegedly patented technology at some point in the future.  Defendants' claim for damages therefore fails as a matter of law, and thus all evidence related to that damages claim should be excluded for the reasons set forth in Aurora's Motion.[11]

## CONCLUSION

For the reasons set forth herein and in the Motion, Aurora respectfully requests that Defendants' counterclaim for patent infringement be dismissed for lack of subject matter jurisdiction.  In the alternative, Aurora respectfully requests that the Court enter an order excluding all testimony, exhibits, and other evidence relating to Defendants' alleged damages.

Dated:  this 4th day of May, 2010.

BROWNSTEIN HYATT FARBER SCHRECK, LLP

By:   *s/ Martha F. Bauer*
      Martha F. Bauer (mbauer@bhfs.com)
      Ronald Gorsché (rgorsche@bhfs.com)
      Ashley Krause (akrause@bhfs.com)
      410 17th Street, Suite 2200
      Denver, Colorado 80202
      Telephone: 303. 223.1100
      Facsimile: 303.223.1111

      ATTORNEYS FOR THE CITY OF AURORA
      AND GRIMM CONSTRUCTION COMPANY,
      INC. D/B/A GARNEY CONSTRUCTION

---

Defendants do not even assert a right to damages based on an allegedly infringing offer for sale.  (*See* Defs.' Br. 12 (alleging right to damages for making, using, and selling, but not for offering to sell).)

[11] Defendants' reliance on the opinion of Aurora's damages expert is nonsensical.  (*See* Defs.' Br. 12-13.)  Aurora's expert was asked, like any damages expert, to assume infringement for purposes of rendering a hypothetical damages opinion. (*See, e.g.*, Pedigo Dep., Exh. B, 76:15-77:3.)  Defendants' damages are zero as a matter of law; even if Mr. Pedigo were qualified to opine on such questions, it would serve no purpose for him to respond to Defendants' damages calculations with a legal argument.  *See id.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 4th, 2010, I served the foregoing **REPLY IN SUPPORT OF MOTION TO DISMISS DEFENDANTS' COUNTERCLAIM FOR LACK OF SUBJECT MATTER JURISDICTION** via ECF upon the following:

Peter A. Gergely
Merchant & Gould
1050 17th St., Suite 1950
Denver, CO  80265-0100
pgergely@merchant-gould.com


By:     s/ *Kerry O'Hanlon*
        Kerry O'Hanlon