**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 07-CV-02371-PAB-BNB

CITY OF AURORA, Colorado, a municipal corporation,
acting by and through its Utility Enterprise, Aurora Water,

    PLAINTIFF AND COUNTERCLAIM-DEFENDANT,

and

GRIMM CONSTRUCTION COMPANY, INC.
d/b/a GARNEY CONSTRUCTION, a Colorado corporation,

    COUNTERCLAIM-DEFENDANT,

vs.

PS SYSTEMS, INC., a Colorado corporation,
and RAR GROUP, LLC, a Colorado limited
liability company,

    DEFENDANTS AND COUNTERCLAIMANTS.

---

**SUPPLEMENTAL MOTION AND BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON NON-INFRINGEMENT OF CLAIMS 1 AND 15 OF THE '218 PATENT**

---

Plaintiff and Counterclaim-Defendant, the City of Aurora, acting by and through its Utility Enterprise, Aurora Water, and Counterclaim-Defendant Grimm Construction Company, Inc. d/b/a Garney Construction (collectively, "Aurora"), respectfully submit the following Motion and Brief for Summary Judgment of Non-infringement of Claims 1 and 15 of the '218 Patent at issue in this case.

## I.    PROCEDURAL BACKGROUND

During the June 4, 2010 Motions hearing before this Court, the Court allowed Aurora to file an additional Summary Judgment Motion of Non-Infringement on the '218 Patent based on the Court's Order Regarding Claim Construction. (Docket No. 195).

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS

1.   In its Order Regarding Claim Construction, the Court construed Claim 1 of the '218 Patent as follows:

> A subsurface water storage system for receiving and storing substantially sediment-free water from a surface water body containing sediment-laden water, the subsurface water storage system comprising:
>
> 1)   an underground porosity storage reservoir storing water, the underground porosity storage reservoir including an underground vessel formed by one or more substantially water-impermeable, man-made barriers and an aquiclude, the vessel defining a volume such that the volume is substantially hydrologically separate from an environment exterior to the volume;
>
> 2)   **at least one aquifer well** linked together, connected, or joined to the underground reservoir by way of an uninterrupted piping system that extends into the underground reservoir – the connection with the reservoir need not be through a reservoir well – the at least one aquifer well being located in an aquifer that is hydrologically connected to the surface water body, each well having a wellhead; and
>
> 3)   a mechanical device, i.e., pump, which actively moves water along the entirety of the connection between the aquifer and the underground reservoir via the **at least one aquifer well** when water from the surface water body is available to be stored, the water being substantially free of sediments found in the surface water body.
>
> (Docket No. 195 at 43-44) (emphasis added).

2.  In its order regarding claim construction, the Court construed Claim 15 of the '218 Patent as follows:

    A subsurface water storage system for receiving and storing substantially sediment-free water from a surface water body containing sediment-laden water, the subsurface water storage system comprising:

    1) an underground porosity storage reservoir storing water, the underground porosity storage reservoir including an underground vessel formed by one or more substantially water-impermeable, man-made barriers and an aquiclude, the vessel defining a volume such that the volume is substantially hydrologically separate from an environment exterior to the volume;

    2) a **reservoir injection well** located in the underground porosity storage reservoir;

    3) an **aquifer extraction well** located in an aquifer that is hydrologically connected to the surface water body; and

    4) a pump for transferring water from the aquifer extraction well to the reservoir injection well when water from the surface water body is available to be stored, wherein the water transferred from the aquifer is substantially free of sediments found in the surface water body.

    (Docket No. 195 at 44) (emphasis added).

3.  Defendants' claim for infringement against Aurora is a claim that the ARR portion of the Prairie Waters Project infringes the '218 Patent.[1] (Final Pretrial Order, Docket No. 110, at 6, 9).

4.  In the body of the '218 Patent, the Patentees define a "well" as possessing both extraction and injection means: "an extraction/injection well (hereinafter a "well") . . . "(Ex. 1, '218 Patent, Col. 5. 1. 22-23.)

---

[1] Defendants also claim the ARR design infringes their '710 Patent, which is not the subject of this Motion.

5. In its Order Regarding Claim Construction, the Court adopted the definition of the word "well" as defined by the patentees and used in the '218 Patent as: "an extraction/injection well [which] is a hole or shaft sunk into the earth, usually vertically, allowing access to subsurface water, and, in a preferred embodiment, includes a section of PVC or metal pipe extending substantially vertically down to a depth below surface."
(Docket No. 195 at 40, *citing* '218 Patent at Col. 5., ll. 22-26).

6. The ARR component of the Project, which is not built, does not contain any aquifer well hydrologically connected to the surface water body. (Ex. 2, Design Drawings[2] at P45C-6).

7. The Prairie Waters Project at the North Well Field contains riverbank wells which draw water through the South Platte River bank alluvium, but those wells are not part of the ARR component of the Project. (Ex. 2, Design Drawings at P45C-6; P45C-7; P45C-8; P10C-1; P45GA-1).

8. The ARR component and the North Well Field are part of the "North Campus" facilities of the Prairie Waters Project, but not all of it. (Ex. 2, Design Drawings, Overview Page.)

9. The extraction wells contained in the ARR design cannot operate in reverse as injection wells. (Ex. 2, Design Drawings at P45C-17).

10. Defendants have admitted the ARR design contains no injection wells (Docket No. 69, "Response to Facts"[3] at ¶¶ 21-23).

---

[2] The Design Drawings attached here as Ex. 2 are culled from the complete Prairie Waters Project J1 Bid Package for the North Campus Facilities Construction; only part of the drawings set out engineering specifications for the discrete ARR portion of the Project. An overview of the North Campus is at the Cover Sheet (Bates No. A7037).
[3] Defendants' Response to Statement of Undisputed Facts in Support of Plaintiff's Motion for Summary Judgment of Non-Infringement of U.S.Patent No. 7,192,218.

11. Defendants have admitted Claim 15 of the '218 Patent requires an aquifer well and a reservoir well. (Final Pretrial Order, Docket No. 110, at 9).

12. Under the ARR design, water would be introduced into above-ground surface infiltration basins by means of open-air concrete apron spillways. (Ex. 2, Design Drawings at P45C -57 through -60).

### III. ARGUMENT

#### A. DEFENDANTS ARE BOUND BY THEIR INFRINGEMENT CONTENTIONS AS SET OUT IN THE FINAL PRETRIAL ORDER, WHICH LIMIT THE INFRINGEMENT ALLEGATIONS TO THE ARR

During oral argument on Aurora's Motion to Dismiss Defendants' Counterclaim for Lack of Subject Matter Jurisdiction, ("Motion to Dismiss") (Docket No. 149), which was before this Court on May 6, 2010, Aurora alerted the Court that Defendants appeared to be impermissibly expanding their infringement claims beyond their infringement contentions that the design of the ARR infringed the Patents at issue. Aurora came to that conclusion after reading Defendants' May 3, 2010 Response to Aurora's Motion to Dismiss,[4] where Defendants for the first time in this action asserted that the allegedly "infringing technology" included not only the ARR but also "the North Well Field (which contains the alluvial wells that pump water from the ground next to the South Platte River and introduce the water to the slurry wall lined ARR); the ARR; and the recovery wells in the ARR that withdraw the water from the ARR." (Docket No. 171-1 at 4). At the May 6 hearing, Aurora verified upon inquiry by the Court that in the Final Pretrial Order, which governs the scope of claims at trial, Defendants had confined their contentions of infringement to the design of the ARR:

---

[4] Docket No. 171-1, PS Systems, Inc. and RAR Group LLC's Response to Motion to Dismiss Defendants' Counterclaim for Lack of Subject Matter Jurisdiction. ("Response to '218 Facts").

> "Aurora's **proposed ARR component** of its Prairie Water Project infringes claims 1 and 14 of the '710 Patent,"
>
> "Aurora's **proposed ARR component** of its Prairie Waters Project infringes independent claim 1 of the '218 Patent, . . .";
>
> "Aurora's **proposed ARR component** infringes claim 15 of the '218 Patent . . ."

Final Pretrial Order, (Docket No. 110 at pp. 6-9.) (emphasis added). Nowhere in the Final Pretrial Order did Defendants assert the design of Prairie Waters as a whole, or the design of the North Campus, infringed their patents.

The final pretrial order is the controlling document for trial. *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002) (*quoting Expertise Inc. v. Aetna Fin. Co.*, 810 F.2d 968, 973 (10th Cir. 1987)). As such, claims, issues, defenses or theories of damages not included in the pretrial order are waived. *Wilson*, 303 F.3d at 1215. The Court may modify a pretrial order "only to prevent manifest injustice." Fed. R. Civ. P. 16(e). It is the general rule that "issues not raised in the pretrial order should not be allowed to be raised at trial if the evidence or issue was within the knowledge of the party seeking modification of the pretrial order at the time of the pretrial conference." *Jeffries v. Tulsa County Bd. of County Com'rs,* 17 Fed. Appx. 952, 954 (10th Cir. 2001) (*quoting Koch v. Koch Industries, Inc.*, 203 F.3d 1202, 1217 (10th Cir.), *cert. denied*, 531 U.S. 926, 121 S.Ct. 302 (2000)).

In accordance with those tenets, and as this Court stated at the May 6 hearing: "[t]he effect of the final Pretrial Order is to control the subsequent course of this action and trial and may not be amended except by consent of the parties **and** approval of the Court . . ." (Tr., 45:4-10). (emphasis added). Here, the evidence demonstrating that the ARR contains no aquifer wells were provided to Defendants two years ago: in June of 2008. (Bates No. 7037).

Defendants have had more than ample time to amend their infringement contentions if they desired. They have not done so, and thus their allegations of infringement are therefore limited to those set out in the Final Pretrial Order: that the design of the ARR, not the design of Prairie Waters as a whole (or of the North Campus), infringes.

### B. THE ARR DESIGN DOES NOT INFRINGE CLAIM 1 OF THE '218 PATENT

#### 1. The ARR Design Does Not Literally Infringe Claim 1 of the '218 Patent.

Literal infringement of a claim occurs only when every limitation recited in the claim appears in the accused device, exactly as those limitations are defined in the claim. *CCC Group, Inc. v. Martin Eng'g Co.,* 2008 U.S. Dist. LEXIS 70578 (D. Colo. Sept. 17, 2008) at *6 (citations omitted). "To establish literal infringement, every limitation set forth in a claim must be found in the accused product exactly. . . failure to meet a single limitation is sufficient to negate infringement." *Engineered Data Prods., Inc. v. Art Style Printing, Inc.,* 78 F. Supp. 2d 1163, 1168 (D. Colo. 1999) (quotations omitted).

The Court has construed Claim 1 of the '218 Patent to require, *inter alia*, the following limitation:

> "**at least one aquifer well** linked together, connected, or joined to the underground reservoir by way of an uninterrupted piping system that extends into the underground reservoir – the connection with the reservoir need not be through a reservoir well – **the at least one aquifer well** being located in an aquifer that is hydrologically connected to the surface water body, each having a wellhead."

As described in the Patent and defined there by the patentees, the "aquifer well" must be an "extraction/injection well" located in an aquifer hydrologically connected to the surface water body (the source water).

Thus, Claim 1's limitation of "at least one aquifer well" as interpreted by this Court in its Claim Construction Order is not present in the ARR design, because there is no "aquifer well" which is located in the aquifer hydrologically connected to the surface water body in the ARR component of the Prairie Waters Project. The North Campus alluvial riverbank wells are clearly not part of the ARR. (Ex. 2, Design Drawings at P10C-1). Thus the ARR design does not and cannot literally infringe Claim 1 of the '218 Patent.

### 2. The ARR Design Does Not Infringe Claim 1 of the '218 Patent Under the Doctrine of Equivalents.

Defendants have unequivocally waived[5] any argument under the doctrine of equivalents for Claims 1 and 15 of the '218 Patent. *Intellicall, Inc. v. Phonometrics,* 952 F.2d 1384, 1389 (Fed. Cir. 1992).

Even if Defendants have not waived the equivalents argument,[6] there is no genuine issue of material fact which precludes summary judgment on that issue; under no circumstance can Defendants meet the requirements to establish infringement under the doctrine of equivalents. *Even if* there were an aquifer well within the ARR, which there is not, no well at the North Campus possesses the extraction/injection capability that the Patentees have required in their definition of a "well" as used in the "transfer system" of the Patent, wherein each well has a dual function capability of extraction and injection. (Ex. 1, Col. 5. l. 48-51).[7]

As Defendants have already admitted, the ARR design contains *no* injection wells. Docket No. 69 at ¶¶ 21-23. It thus contains no injection wells which could function also as

---

[5] Response to Motion for Summary Judgment, Docket No. 68, at 14.
[6] Which Aurora does not concede.
[7] Because the named inventors provided their own definition of "well," that definition governs. Order Regarding Claim Construction (Docket No. 195, at 40); *citing Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (en banc); *see also Autogiro Co. of America v. United States*, 384 F.2d 391, 397 (Ct. Cl. 1967) (Patent law "allows the inventor to be his own lexicographer.").

extraction wells.  The ARR design does contain 47 extraction wells, but contains *no* extraction wells which could function as injection wells.  (Ex. 2, Design Drawings at P45C-17.).

Under a doctrine of equivalents analysis, the Supreme Court requires that **each element** of the claim at issue must be compared to the allegedly infringing device (here, the ARR) to determine whether the equivalent of that element is present.  *Warner-Jenkinson v. Hilton Davis Chem. Co.*, 520 U.S. 17, 24 (1997).  Equivalents in a doctrine equivalents analysis must be assessed on a claim-by-claim, limitation-by-limitation basis, not on any blanket comparison of the patent document generally to the accused device.  The Federal Circuit requires that Courts may not apply the doctrine of equivalents by comparing the "invention as a whole" to the alleged infringing technology as a whole: "Only if an accused product contains *specific structures which meet all limitations of a claim directed to structure*, at least equivalently, can that product infringe under the doctrine of equivalents."  *Southwall Technologies v. Cardinal IG Co.*, 54 F.3d 1570, 1579 (Fed. Cir. 1995) (emphasis added).  "The focus on individual limitations, rather than on the accused devise as a whole, aids the court in being specially vigilant against allowing the concept of equivalence to eliminate any claim limitations completely."  *Allen Engineering Corp. v. Bartell Industries*, 299 F.3d 1336, 1345 (Fed. Cir. 2002).  In other words, as with literal infringement, in order to infringe under the doctrine of equivalents, the accused product must contain every element or limitation of the claim; a claimed element is present in the accused device if the differences between the claimed element and a comparable element are not substantial.  *See Marquip, Inc. v. Fosber America, Inc.*, 198 F.3d 1363, 1366 (Fed. Cir. 1999).

Thus, to find infringement under the doctrine of equivalents, some element of the ARR as designed must perform substantially the same function, in substantially the same way, to achieve

substantially the same result, as each claimed element. *Precision Metal Fabricators v. Jetstream Sys.,* 693 F. Supp. 814, 818-19 (N.D. Cal.1988). None of these requirements can be satisfied here for the "aquifer well" limitation of Claim 1. It is clear from the engineering specifications for the ARR set out in the Design Drawing that there is simply no element of the ARR which can perform the same function in the same way and with the same result as the extraction/injection aquifer well defined in the Patent. Therefore, the ARR design cannot infringe Claim 1 of the under the doctrine of equivalents.

**(a)    The ARR Design Does Not Contain Any Feature Which Performs the Function of Claim 1's Reversible Extraction/Injection Aquifer Wells**.

Because the ARR is a one-way flow-through purification system, with water heading only toward the Peter Binney Purification Plant, nothing in the ARR can perform the 2-way reversible extraction/injection function required by the Patentee's definition of "well" as set out in the Patent. This failure highlights and reinforces the essential difference between the storage system claimed in the '218 Patent and the ARR water purification design: the Patentees describe a two-way "transfer system" wherein the water stored in the underground reservoir can be alternately extracted or injected into the reservoir by its wells as needed. (Docket No. 195 at 41). Logically, that mechanism is necessary in a reservoir storage situation where there is structurally only one entry point for water into and out of the reservoir, as shown in the '218 Patent. If the reservoir becomes full, or water is needed, the well pumps must be able to reverse.

In the ARR, the extraction wells do not have to be reversible, because the water will never go (and physically could not go) back up through the infiltration ponds for use. Instead, the water constantly flows one-way through the ARR much like an underground river toward the purification plant and storage at the Aurora Reservoir; there is never a body of stored water that

could "fill up." Thus there is no element which in any way can perform the dual function of the element of the aquifer wells set out in Claim 1.

### (b) The ARR Design Does Not Contain Any Feature Which Performs in Substantially the Same Way as Claim 1's Reversible Extraction/Injection Aquifer Wells.

#### 1. *The Extraction Wells Cannot Perform In the Same Way as the Claim 1 Aquifer Wells*.

As explained above, the ARR contains only extraction wells and no injection wells. The extraction wells perform no injection, and water can move through them in only one direction. (Ex. 2, Design Drawings at P45C-17). Thus, the ARR wells have no reversibility and cannot perform in the same way, or even in substantially the same way, as the dual-directional aquifer wells claimed in Claim 1.

#### 2. *The Spillway Aprons or Spillway Apron/Infiltration Ponds Cannot Perform in the Same Way as the Claim 1 Aquifer Wells.*

Nor can the open-air spillway aprons or spillway apron/infiltration ponds where water is designed to flow into the ARR perform in substantially the same way as extraction/injection wells, because there is no way for the water going down the spillway into open-air infiltration ponds to reverse. (Ex. 2, Design Drawings at 45C-17). Further, as the Court noted in its Claim Construction Order, "all of the descriptions of specific transfer methods are of the active forceful movement of water to an underground location in the reservoir," (Docket No. 195 at 33), not "passive, above-ground gravity-driven methods of recharge such as infiltration ponds." (*Id.* at 38). Thus the spillway apron or spillway apron/infiltration ponds cannot perform in the same way as the aquifer injection/extraction wells which are a limitation of Claim 1.

      **(c)**    **The ARR Design Does Not Accomplish Substantially the Same Results as the Claim 1 Reversible Extraction/Injection Aquifer Wells.**

Neither the ARR's extraction wells nor the spillway apron or spillway apron/infiltration ponds of the ARR accomplish the same results as the reversible aquifer wells claimed as in Claim 1.

      **1.**    *The Extraction Wells Do Not Accomplish the Same Result as the Claim 1 Aquifer Wells.*

The result of the workings of the dual function aquifer wells is to insert water by injection into the underground storage reservoir. The ARR extraction wells cannot accomplish that result, as they are for extraction, not placement of water into underground storage.

      **2.**    *The SpillwayApron or SpillwayApron /Infiltration Ponds Do Not Accomplish The Same Result as the Claim 1 Aquifer Wells.*

The spillway apron and/or spillway apron/infiltration ponds cannot accomplish the same result as the dual function aquifer wells claimed in Claim 1. Injection prevents contamination of water with additional sediment and allows use of the surface area above the underground reservoir, both results which were set out by the patentees as advantages in the Background section of the Patent. (Ex. 1, '218 Patent. *e.g.* at Col.1. ll 35-47; 61-66; Col. 2, ll.14; 23-28; 40-44). Those results would not accrue as results under the ARR design.

**C.**    **THE ARR DESIGN DOES NOT INFRINGE CLAIM 15 OF THE '218 PATENT.**

    **1.**    **The ARR Design Does Not Literally Infringe Claim 15 of the '218 Patent.**

This Court has interpreted Claim 15 of the '218 Patent to require a "reservoir injection well" *and* an "aquifer injection well" which may also serve as an extraction well. (Docket No. 195 at 42, 44). Defendants have admitted that Claim 15 requires both an aquifer well and a reservoir well (Final Pretrial Order, Docket No. 110, at 9); they also admit that the ARR contains

no injection well. (Defendants' Response to '218 Facts, Docket No. 69, at ¶¶ 21-23). Thus, the ARR design cannot literally infringe Claim 15 of the '218 Patent, because it contains no injection well, and thus no aquifer injection well. *See CCC Group v. Martin* at *6.

### 2. The ARR Design Does Not Infringe Claim 15 Under the Doctrine of Equivalents.

Neither can the ARR design infringe Claim 15 under the doctrine of equivalents.[8] As with the Claim 1 analysis, there is no element[9] of the ARR which can perform the same function, in the same way, and render the same result as the "aquifer extraction well" which the Court has construed is a limitation of Claim 15 (Docket No. 195 at 44). Neither is there any element of the ARR that can perform the same function in the same way, and render the same result as the "reservoir injection well" which the Court has construed as a limitation of Claim 15. (*Id.*) There can be no fact issue as to whether there are specific engineered design structures in the ARR which meet all limitations of the Claim 15, and thus there can be no infringement of the claim under the doctrine.

#### (a) The ARR Design Does Not Contain Any Feature Which Performs the Function of Claim 15's Wells

There is no element in the ARR that performs the function of extracting water from the surface water body (here, the South Platte River). The ARR is a discrete design component which may optionally "plug in" to the independent and functional Prairie Waters Project, which contains the already-existing North Well Field riverbank extraction and filtration system, which is hooked up to a pipeline and delivering water some 30 miles south to the Binney purification

---

[8] As with Claim 1, Defendants have unequivocally waived a doctrine of equivalents argument. *See infra* footnote 5-6 and accompanying text.
[9] Aurora incorporates by reference the legal authority regarding application of the doctrine as set out in the portion of this Brief discussing Claim 1; *see infra* p.9-10.

plant and Aurora Reservoir storage. The ARR does not have an aquifer extraction component of *any* kind, (Ex. 2, Design Drawings at A7037); thus no ARR element can perform the function of extraction of the "aquifer extraction well" which is a limitation of Claim 15.

And, as for the same reasons set out at above[10] (discussing Claim 1), neither the ARR extraction wells nor the spillway apron or spillway apron/infiltration ponds perform the function of the "reservoir injection well" which is also a requirement or limitation of Claim 15. (*Id.*)

### (b) The ARR Design Does Not Contain Any Feature Which Performs in Substantially the Same Way as Claim 15's Reversible Extraction/Injection Wells.

The means of introduction of water to the ARR infiltration ponds and then underground is by surface flow and gravity, not by forceable injection, which is a way the term "aquifer extraction wells" have been construed by this Court to function. (Docket 195 at 44) (the "aquifer extraction well" required by Claim 15 "may also serve as an injection well." Thus, for the same reasons as set out above[11] (discussing Claim 1), neither the ARR extraction wells nor the spillway apron or spillway apron/infiltration ponds perform in substantially the same way as either the aquifer injection or reservoir wells which are limitations of Claim 15.

### (c) The ARR Design Does Not Accomplish Substantially the Same Results as Claim 15's Reversible Extraction/Injection Aquifer Wells.

Because there is no feature in the ARR design which performs the function of extracting water from the surface source, the ARR inherently could not achieve the extraction function of the aquifer extraction well limitation of Claim 15 as construed by this Court. Similarly, the ARR extraction wells cannot achieve that result, because their purpose is to keep water moving

---

[10] *See* subsection III.B.2., *infra.*
[11] *Id.*

through the underground toward the massive Prairie Waters pipelines.  Nor can the extraction wells or the spillway aprons or spillway aprons/infiltration ponds achieve the same result as the Claim 15 limitation of a "reservoir injection well," for the same reasons as set out above[12] (discussing Claim 1), *i.e.* that the results obtained by injection are not equivalent to those obtained where water percolates to the underground by gravity.

## IV.    CONCLUSION

The '218 Patent's "aquifer well," which is a limitation of Claim 1 and Claim 15, incorporate an injection feature, by definition, and by admission.  Because Defendants have admitted the ARR contains no injection well, the only avenue available to meet their burden of infringement under the doctrine of equivalents is to precisely establish that some structural feature of the ARR is equivalent to each structural element of the claim limitations.  As explained above and confirmed by reference to the Design Drawings, the ARR's extraction wells cannot reverse their flow to inject.  And neither can the spillway apron nor the spillway apron/infiltration ponds structurally meet the requirement of structural equivalency, based on undisputed material facts as explicit in the ARR engineering Design Drawings.

The public must be allowed to rely on what is claimed in a patent, not what patentees wish they had claimed.  The doctrine of equivalents is not an excuse to read claim limitations out of a patent, nor is it a tool for expanding the protection of a patent after examination has been completed.  *Hormone Research Foundation, Inc., v. Genentech, Inc.*, 904 F.2d 1558, 1564 (Fed. Cir. 1990).  Because the patentees here defined "well" in a specific manner, they limited the meaning of "aquifer well."  They cannot now expand that meaning under the doctrine of

---

[12] *See* subsection III.B.2 *infra.*

equivalents to include structures that do not fall within that definition, and of course they cannot in this late stage of the proceedings change their infringement contentions to add new structures outside the allegedly infringing technology.

Under this Court's Order on Claim Construction, Summary Judgment of Non-Infringement is thus appropriate on Claims 1 and 15 of the '218 Patent.

Dated: this 14th day of June 2010.

                              BROWNSTEIN HYATT FARBER SCHRECK, LLP

                              By:    s/ *Martha F. Bauer*
                                     Martha F. Bauer (mbauer@bhfs.com)
                                     Ronald Gorsché (rgorsche@bhfs.com)
                                     Ashley Krause (akrause@bhfs.com)
                                     410 17th Street, Suite 2200
                                     Denver, Colorado 80202
                                     Telephone: 303. 223.1100
                                     Facsimile: 303.223.1111

                                     ATTORNEYS FOR THE CITY OF AURORA
                                     AND GRIMM CONSTRUCTION COMPANY,
                                     INC. D/B/A GARNEY CONSTRUCTION

## CERTIFICATE OF SERVICE

       I hereby certify that on June 14, 2010, I served the foregoing **SUPPLEMENTAL MOTION AND BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF CLAIM 1 AND 15 OF '218 PATENT** via ECF upon the following:

Peter A. Gergely
Merchant & Gould
1050 17th St., Suite 1950
Denver, CO  80265-0100
pgergely@merchant-gould.com


By:    s/ *Kerry O'Hanlon*
           Kerry O'Hanlon