**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 07-CV-02371-PAB-BNB

CITY OF AURORA, Colorado, a municipal corporation,
acting by and through its Utility Enterprise, Aurora Water,

    PLAINTIFF AND COUNTERCLAIM-DEFENDANT,

and

GRIMM CONSTRUCTION COMPANY, INC.
d/b/a GARNEY CONSTRUCTION, a Colorado corporation,

    COUNTERCLAIM-DEFENDANT,

vs.

PS SYSTEMS, INC., a Colorado corporation,
and RAR GROUP, LLC, a Colorado limited
liability company,

    DEFENDANTS AND COUNTERCLAIMANTS.

---

**PLAINTIFF AND COUNTERCLAIM-DEFENDANTS'
MOTION IN LIMINE TO EXCLUDE "PIONEER" EVIDENCE**

---

Plaintiff and Counterclaim-Defendant, the City of Aurora, acting by and through its Utility Enterprise, Aurora Water (the "City"), and Counterclaim-Defendant Grimm Construction Company, Inc. d/b/a Garney Construction ("Garney" and collectively, with the City, "Aurora"), move the Court to exclude evidence related to any allegations or suggestions that the two patents-in-suit are "pioneer" patents or that any of the inventors of the patents-in-suit are "pioneers" or "pioneering" inventors.

**I.      INTRODUCTION**

Defendants should be precluded from introducing evidence at trial suggesting that the named inventors of the two patents-in-suit (the "PS Patents") are "pioneers" or "pioneering," and that the PS Patents are "pioneer" patents. The PS Patents do not qualify as pioneer patents under established law, and there is no evidence that the named inventors of the PS Patents are pioneering inventors. The Court should exclude all "pioneer" evidence, and any related jury instructions, because such evidence is irrelevant, would cause unfair prejudice to Aurora, and also likely would mislead jurors and cause them confusion.

**II.     EVIDENCE TO BE EXCLUDED**

Defendants likely will seek to introduce at least the following evidence at trial relating to their untenable positions that the PS Patents are pioneer patents and that one or more of the named inventors are "pioneers" or "pioneering" inventors:

- A book authored by Aurora's invalidity expert, David Pyne, and purchased from Mr. Pyne by a named inventor of the PS Patents, Stanley Peters, that contains the following inscription: "To Stan Peters – a pioneer of porosity storage – Best wishes, David Pyne June 4, 2008." Defendants' Trial Exh. 59, attached as Exh. 1 to this Motion.

- Testimony from Mr. Pyne about the book inscription, the meaning of the term "pioneer," and Mr. Pyne's prior use of the term "pioneer" in his writings. *See, e.g.*, Exh. 2, Pyne Dep. at 148:14-151:15.

- Testimony from other witnesses about the book inscription and the meaning of the term "pioneer." *See, e.g.*, Exh. 3, Binney Dep. at 211:13-212:10.

- Aurora documents relating to the Prairie Waters Project that contain use of "pioneer" terminology. *See, e.g.,* Defendants' Trial Exh. 78, attached as Exh. 4 to this Motion.

For the reasons explained below, this evidence and any other "pioneer" evidence should be excluded because it is not relevant to either party's claims or defenses, and because the introduction of such evidence would unfairly prejudice Aurora and is likely to mislead jurors or cause juror confusion.

## III.  APPLICABLE LAW & ARGUMENT

### A.  The Definition and Legal Significance of Pioneer Patent Status

The term "pioneer" has a specific meaning in the context of patents.  The term "is commonly understood to denote a patent covering a function never before performed, a wholly novel device, or one of such novelty and importance as to mark a distinct step in the progress of the art, as distinguished from a mere improvement or perfection of what had gone before."[1] *Westinghouse v. Boyden Power Brake Co.*, 170 U.S. 537, 561-62 (1898)*; see also Texas Instruments, Inc. v. U.S. Int'l Trade Comm'n*, 805 F.2d 1558, 1572 (Fed. Cir. 1986) (recognizing that pioneering inventions are "occasional" and "devoid of significant prior art").  In contrast to a pioneer patent, an improvement patent is one confined in scope "by the existing knowledge on which the improvement is based."  *Abbott Laboratories v. Dey, L.P.*, 287 F.3d 1097, 1105 (Fed. Cir. 2002).

The significance of pioneer patent status generally arises in the infringement analysis, particularly in the analysis of infringement under the doctrine of equivalents.  *See Augustine Medical, Inc. v. Gaymar Indus., Inc.*, 181 F.3d 1291, 1301 (Fed. Cir. 1999) ("Without extensive prior art to confine and cabin their claims, pioneers acquire broader claims than non-pioneers who must craft narrow claims to evade the strictures of a crowded art field.").  *Cf. Thomas & Betts Corp. v. Litton Sys., Inc.*, 720 F.2d 1572, 1580 (Fed. Cir. 1983) (where patent was not a

---

[1] In further describing the concept, the Supreme Court noted that conspicuous examples of pioneer patents "are the one to Howe, of the sewing machine; to Morse, of the electrical telegraph, and to Bell, of the telephone." *Westinghouse*, 170 U.S. at 561-62.

pioneer patent, court found the claims should be given a narrow range of equivalents). Traditional limits on the doctrine of equivalents – such as prosecution history estoppel and prior art limitations – do not always apply to pioneer patents "because amendments or arguments to overcome the prior art generally are unnecessary in true pioneer applications." *Augustine Medical, Inc.*, 181 F.3d at 1301-02.

In limited circumstances, pioneer status has been considered by courts – along with other related factors – in the reasonable royalty analysis to assess damages. However, courts that have considered pioneer status in the reasonable royalty analysis typically do so where pioneer status is coupled with evidence of commercial success. *See Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (noting that in its reasonable royalty analysis, the trial court considered that the subject patent was a "'pioneer' patent with manifest commercial success," among a number of other factors); *see also Linear Tech. Corp. v. Micrel, Inc.*, No. C-94-1633, 2006 U.S. Dist. LEXIS 96860, at *266 (N.D. Cal. June 9, 2006) (citing *Rite-Hite Corp.*, 56 F.3d at 1554.).[2]

### B.     Defendants' Patents Are Improvement Patents, Not Pioneer Patents

Neither of the PS Patents covers a "function never before performed, a wholly novel device, or one of such novelty and importance as to mark a distinct step in the progress of the art." *Westinghouse*, 170 U.S. at 561-62. As the inventors' admissions demonstrate, both of the PS Patents are improvement patents, not pioneer patents.

1.     The '710 Patent

---

[2] The court in *Linear Technology* relied on *Rite-Hite* for the following proposition: "A high royalty rate is considered reasonable when the patent in question was a 'pioneer' patent with manifest commercial success; the patentee had consistently followed a policy of exploiting its own patents, rather than licensing to competitors; the patentee anticipated a number of collateral sales; the patentee consistently exploited its patents and did not license to competitors <u>and</u> the patentee would have had to forego a large profit by granting a license to the infringer because it was a strong competitor." 2006 U.S. Dist. LEXIS 96860, at *266 (emphasis added). The use of the conjunctive "and" in *Rite-Hite* and *Linear Technology* suggests that all of these factors considered together – not any single factor alone – supported a higher royalty rate.

4

During prosecution of the '710 patent, the USPTO initially rejected or objected to all but three claims in the application on the basis that the alleged invention was obvious in view of the invention taught by the Willis patent. Exh. 5. In a subsequent office action, the USPTO rejected or objected to the same claims on the grounds that the alleged invention was obvious in view of the Willis patent and a patent issued to Ressi di Cervia.[3] Exh. 6 at Bates A05469.

To overcome this second obviousness rejection, Defendants submitted declarations addressing the advantages of the invention over prior art. Exh. 7 at Bates A05430-36. In doing so, Defendants argued that the evidence found in the declarations demonstrates "the existence of a 'persistent' need for *improved water storage systems* that was recognized by those skilled in the art . . . , a need that is squarely addressed by the Applicants' claimed invention." *Id*. at Bates A05427.

The "Background" section of the '710 patent's specification confirms that this patent is no pioneer. That section focuses on the "drawbacks" of the Willis patent and the advantages of the purported invention of the '710 patent over the Willis invention, before concluding with the following statement:

> Thus, *an improved subsurface reservoir and method for storing water is needed* that will address the shortcomings of the Willis design. It is with respect to these and other background considerations, limitations and problems that the present invention has evolved.

Exh. 8 at col. 3, lines 31-33 (emphasis added).

By admission, the '710 patent is an improvement patent and cannot be considered a "pioneer." Certainly, by seeking to improve upon the prior art and overcoming an obviousness rejection only through significant argument, the '710 patent does not qualify as a pioneer patent.

---

[3] In the office action, the USPTO asserted that, "Willis discloses the claimed invention except for the underground wall being a slurry wall and being keyed into an aquiclude" and further noted that the slurry wall and keying not covered by the Willis patent were disclosed in the Ressi di Cervia patent. *Id*.

5

*See, e.g., Augustine Medical, Inc.*, 181 F.3d at 1302 ("arguments to overcome the prior art are generally unnecessary in true pioneer applications").

The non-pioneer status of the '710 patent has been further confirmed by recent action of the USPTO, which granted Aurora's request for reexamination of the '710 patent. Exh. 9. Notably, the USPTO granted reexamination on 19 counts of prior art combinations, and the reexamination implicates both independent and dependent claims. *Id.* If this patent were a pioneer patent, there would not exist prior art sufficiently close to the claimed inventions to warrant a reexamination of the patent.

As the USPTO's actions confirm, the existence of numerous prior art references further demonstrate that the '710 patent is not a pioneer. *See Augustine Medical, Inc.*, 181 F.3d at 1301 ("a pioneer generally need not fear traditional limits on the application of the doctrine of equivalents such as prior art or prosecution history estoppel"); *see also* Aurora's Revised Notice Under 35 U.S.C. § 282, ECF Doc. No. 147 (identifying prior art to be used by Aurora at trial to prove invalidity).

2.  The '218 Patent

Defendants have admitted that the '218 patent is an improvement patent, which improved upon the invention claimed in the '710 patent. *See* Final Pretrial Order, ECF Doc. No. 110, at p. 8, § 3(b) ("The '218 Patent is an improvement over the '710 Patent . . . "); Defendants' Response to Motion for Summary Judgment, ECF Doc. No. 68, at 2 ("The '218 Patent is an improvement over U.S. Patent No. 6,840,710 . . . "). Such admissions preclude Defendants from now asserting that the '218 patent is a pioneer patent.[4] *See Westinghouse*, 170 U.S. at 561-62; *Abbott Laboratories*, 287 F.3d at 1105.

---

[4] In addition, the "Background" section of the '218 patent's specification confirms the improvement status of the patent by addressing the "drawbacks" of the '710 invention and other prior art. Exh. 10 at cols. 1 & 2.

The prosecution history of the '218 patent also confirms that the patent is not a pioneer. For example, the USPTO issued an obviousness rejection of the '218 application based on several prior art references, and Defendants had to respond with argument to overcome the cited references. Exh. 11. Such arguments exposed the '218 patent to a risk of prosecution history estoppel. *See, e.g.,* Motion for Summary Judgment of Non-Infringement, ECF Doc. No. 59, at 13-15 (Aurora's argument regarding application of prosecution history estoppel). The existence of these prior art references and the likely application of prosecution history estoppel confirm that the '218 patent is an improvement patent, not a pioneer patent. *See, e.g., Augustine Medical, Inc.*, 181 F.3d at 1301-02.

Moreover, the non-pioneer status of the '218 patent has been further confirmed by recent action of the USPTO, which granted Aurora's request for reexamination of the '218 patent. Exh. 12. The USPTO granted reexamination on 16 counts of prior art combinations, and the reexamination implicates both independent and dependent claims. *Id.* As with the '710 patent, if the '218 patent were truly a pioneer patent, there would not exist prior art sufficiently close to the claimed inventions to warrant a reexamination of the patent.

**C.     The Named Inventors of the PS Patents Are Not Pioneers or Pioneering**

By taking the book inscription by Aurora's expert, David Pyne, out of context, Defendants likely will seek to persuade the jury and the Court that named inventor Stanley Peters is a pioneer for the purpose of defending against the invalidity claims in the case, and to support their request for a higher "reasonable royalty" rate. However, as Mr. Pyne's deposition testimony demonstrates, the book inscription is not evidence that Mr. Peters is a "pioneer," as that term is used in the patent context.

7

Rather, when placed into context, as Mr. Pyne's deposition testimony demonstrates, the "pioneer" book inscription was an off-hand comment intended by the author to address the entrepreneurial business efforts of Mr. Peters, not to suggest that the PS Patents or any of their named inventors are innovative. *See* Exh. 2, Pyne Dep. at 149:3-24 (explaining his use of the term "pioneer" in the inscription as describing "one who moves forward along whatever path he's chosen, even though he knows he's likely to get arrows in the back").

As further evidence confirming the inscription's inapplicability to the PS Patents, Mr. Pyne testified that he did not believe that Mr. Peters had made any new contributions to the "porosity storage" field. Exh. 2, Pyne Dep. at 151:8-11. In addition, since the PS Patents do not qualify as pioneer patents, it necessarily follows that the named inventors cannot be considered "pioneers" for having allegedly conceived of the non-pioneering inventions set forth in those patents.

### D.     "Pioneer" Evidence Is Not Relevant

The Court should exclude any "pioneer" references or exhibits from trial because such evidence is irrelevant. *See* Fed. R. Evid. 401, 402. The PS Patents are not pioneer patents under established law, and a mere book inscription cannot transform a named inventor into a pioneer so as to save the inventor's patent from an invalidity challenge. Accordingly, "pioneer" testimony and exhibits should not be admitted at trial.

First, Defendants' "pioneer" evidence is not relevant to infringement. In fact, Defendants have never asserted that the PS Patents should be considered pioneer patents for the purpose of broadening the claims of the PS Patents and assessing infringement under the doctrine of equivalents. Indeed, as addressed above and in the briefing on Aurora's summary judgment motion, one of the reasons that the PS Patents are *not* pioneer patents is because their claims are

8

limited in scope by the existing prior art and both are exposed to the risk of prosecution history estoppel. *See Augustine Medical, Inc.*, 181 F.3d at 1301. As a result, Defendants' "pioneer" evidence is not relevant to the assessment of whether Aurora infringes the PS Patents.

Likewise, since the patents do not qualify as pioneer patents, "pioneer" evidence is not relevant to Defendants' damages claim.[5] Without pioneer patents, Defendants certainly cannot justify their request for a jury instruction stating that pioneer patents may be entitled to a higher "reasonable royalty" rate.[6] *See* Exh. 13, Defendants' proposed Jury Instruction No. 39 (excerpted from ECF Doc. No. 211).

Defendants' "pioneer" evidence also is not relevant to the invalidity claims asserted by Aurora. As explained above, the "pioneer" inscription does not constitute evidence of Mr. Pyne's opinions about Mr. Peters' allegedly innovative nature; nor does it suggest that the PS Patents are pioneer patents or are otherwise spared from the application of the numerous prior art references at issue in this case.

Finally, Defendants' "pioneer" evidence is not relevant to Aurora's unenforceability claim since that claim relates entirely to the disclosure obligations of the patentees and related persons during the prosecution of the patents-in-suit, and has nothing to do with whether the inventions at issue were "pioneering" or whether the named inventors were "pioneers." *See, e.g., Warner Lambert Co. v. Teva Pharms.*, 418 F.3d 1326, 1342 (Fed. Cir. 2005) ("Inequitable

---

[5] In the event that the Court grants Aurora's Motion to Dismiss Defendants' Counterclaims for Lack of Subject Matter Jurisdiction (ECF Doc. No. 149), which the Court has determined "should not be limited to subject matter jurisdiction," then no damages evidence will be admitted. *See* Courtroom Minutes for May 6, 2010, ECF Doc. No. 181.

[6] Even if the PS Patents were pioneer patents, such an instruction still would be improper since there is no evidence that the PS Patents have achieved commercial success. *See, e.g., Rite-Hite Corp*, 56 F.3d at 1554 (noting that in its reasonable royalty analysis, the trial court considered that the subject patent was a "'pioneer' patent with manifest commercial success," among a number of other factors). The authority citations in Defendants' proposed Jury Instruction No. 39 confirm that "commercial success" is required. *See* Exh. 13; *see also* Footnote 2, *supra*, addressing other factors considered by the trial court in allowing a higher royalty rate.

9

conduct occurs when a patentee breaches his or her duty to the PTO of 'candor, good faith, and honesty.'").

In sum, the "pioneer" book inscription is not relevant to any party's claims or defenses and should be excluded by the Court. Because the inscription is not relevant and because the PS patents are not pioneer patents, it follows that any testimony about that inscription or about any witness's understanding or use of the term also is irrelevant and should be excluded.

### E. If Allowed, Defendants' "Pioneer" Evidence Would Unfairly Prejudice Aurora and Create Confusion

Defendants' "pioneer" evidence not only is irrelevant, but it also likely would unfairly prejudice Aurora and cause juror confusion if admitted. *See* Fed. R. Evid. 403.

Because the PS Patents are not pioneer patents, any evidence or testimony relating to either the named inventors or patents being pioneering would be misleading and would result in unfair prejudice to Aurora. For example, if jurors are led to believe that Aurora's expert believes that a named inventor of the PS Patents is indeed a "pioneer," they will be much less likely to independently evaluate the invalidity evidence and conduct an unbiased analysis of the prior art. Aurora should not be exposed to such unfair prejudice, and the jurors should not be exposed to evidence that is likely to create such significant confusion and bias. Even if "pioneer" evidence were to be admitted for a limited purpose, there would remain a significant risk of unfair prejudice to Aurora and juror confusion because the term "pioneer" has a special meaning in the patent context with which jurors may be familiar and which in turn may cause them to attribute unnecessary weight to "pioneer" evidence. Accordingly, Rule 403 mandates that all "pioneer" evidence should be excluded.

### IV. **MEET AND CONFER CERTIFICATION**

Undersigned counsel certifies that on June 15, 2010, counsel for Aurora conferred with Defendants' counsel, who indicated that he objects to the relief sought in this Motion.

### V. **CONCLUSION**

For the reasons set forth herein, Aurora respectfully requests that the Court exclude evidence related to any allegations or suggestions that the two patents-in-suit are pioneer patents, or that any of the named inventors of the patents-in-suit are "pioneers" or "pioneering."

Dated: this 15th day of June, 2010.

BROWNSTEIN HYATT FARBER SCHRECK, LLP

By: s/ *Martha F. Bauer*
Martha F. Bauer
Ronald Gorsché
Ashley Krause
410 17th Street, Suite 2200
Denver, Colorado 80202
Telephone: 303.223.1100
Facsimile: 303.223.1111
mbauer@bhfs.com
rgorsche@bhfs.com
akrause@bhfs.com

ATTORNEYS FOR PLAINTIFF AND COUNTERCLAIM-DEFENDANT THE CITY OF AURORA AND COUNTERCLAIM-DEFENDANT GRIMM CONSTRUCTION COMPANY, INC. D/B/A GARNEY CONSTRUCTION

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2010, I served the foregoing **PLAINTIFF AND COUNTERCLAIM-DEFENDANTS' MOTION IN LIMINE TO EXCLUDE "PIONEER" EVIDENCE** via ECF upon the following:

Peter A. Gergely  
Merchant & Gould  
1050 17th St., Suite 1950  
Denver, CO  80265-0100  
pgergely@merchant-gould.com

By:  s/ *Kerry O'Hanlon*  
Kerry O'Hanlon